[No. 6515.  Decided April 8, 1907.]

H. L. TATUM et al., *Appellants,* v. W. A. GEIST et al.,
*Respondents.*[1]

SALES—ACCEPTANCE—EVIDENCE—SUFFICIENCY.  Where, upon the sale of a planing machine, the vendors agreed to accept a return of the same if the machine was not satisfactory, the evidence shows that there was no acceptance or liability for the price, where it appears that, instead of a new machine, one was sent which had been used, with which the vendees from the first and repeatedly thereafter expressed dissatisfaction, specifying various defects, which experts of the vendor could not remedy, the vendees finally offering to return the machine, and where it appears that the setting up and attempted use of the machine by the vendees for two months was by direction of the vendors under a promise to make it perfectly satisfactory before asking for any money; since the vendees were sole arbiters as to satisfactory performance, and expressed dissatisfaction within a reasonable time.

Appeal from a judgment of the superior court for Clallam county, Hatch, J., entered April 5, 1906, upon findings in

[1]Reported in 89 Pac. 547.

favor of the defendants, after a trial on the merits before the court without a jury, in an action on contract. Affirmed.

*Shank & Smith,* for appellants.

*Trumbull & Trumbull,* for respondents.

MOUNT, J.—Appellants brought this action to recover the contract price of a planing machine sold to respondents. The cause was tried to the court without a jury. Findings were made and judgment entered in favor of the defendants. The plaintiffs prosecute this appeal.

The facts are as follows: On November 20, 1903, the respondents ordered a new Northwest planer from the plaintiffs' agent at Seattle. The agent agreed to have the machine forwarded from Portland, Oregon. Thereupon the following memorandum of agreement was entered into:

"11-20-03.

"Terms 3 per cent. off for cash, or 1-3 down, bal. 3 mos., or 1-2 down, bal. 6 mos. Charge to W. A. Geist, Postoffice address Port Angeles. Ship to Port Angeles, . . . 1 26x8, 6 roll, divided roll, new Northwest. To be furnished with 1 complete set of Philbrick Matcher heads for flooring and shiplap, $1,100. Because machine is not at this store for inspection, we agree to accept return of same, free of expense, to Tatum & Bowen, provided the machine is not satisfactory.

"Tatum & Bowen, By C. A. Taber. W. C. Geist."

In pursuance of this contract, a machine was ordered from Portland, Oregon. It arrived in Seattle the last day of November, 1903, and was then found by appellants' agent to be a machine which had been used; but it was immediately forwarded to the respondent at Port Angeles, and a letter was written by Mr. Taber, the appellants' agent, explaining that the machine had been used slightly, but that it was a new machine and all right. This letter closed by saying:

"Kindly do what you can towards setting the machine up and putting it in operation, and if you have any difficulty

in starting it wire us and we will have Mr. Arper go there at once and straighten out any trouble that you have."

In due course the machine arrived at Port Angeles, and on December 7, 1903, respondents wrote to appellants, saying that, after unpacking the machine, they found some defects and part of the flanges on the feed cone broken, and "you understand that you sold us a new machine and we expect that you will send us a new cone and any other parts that are defective. . . . We expect you to make it right. All we ask is fair treatment." On January 7, 1904, respondents wrote to appellants again, calling attention to some broken knives and insufficient wrenches. On January 30, 1904, appellants sent to respondents a statement of account and requested the amount of cash payment "which you agreed to make upon delivery of the machine." Respondents then wrote appellants as follows:

"In reply to yours of the 30th ult., I wish to say that evidently you have overlooked the agreement governing the purchase of the planer, or you would not ask me to sign notes with interest, and you would no doubt have received a check for part before this had I been satisfied that the planer is all right. I find that the lower cylinder collar is not trued up, thus letting it go back and forth, and another thing is the feeding of the planer is very poor. At times it wont feed a 4 inch piece of flooring strips, and I have been trying in several ways to adjust it but up to the present time I have not succeeded and I am beginning to think that possibly the machine has been refused by other parties for that reason. If you know of any way that might do some good I would be glad to hear from you. I would also say that you have failed to send me a new feed cone. . . . We have no 5-8 wrench, and no 1-2 socket wrench to tighten up the side head pulleys with, and the wrench sent to tighten the upper and lower cylinder knives with is entirely too short and weak."

On February 8, 1904, appellants answered this letter, saying:

"We are very much disappointed at the tone of your letter of Feb. 4, because we were sure that the machine would be

perfectly satisfactory. The cone pulley was immediately ordered from the factory but was sent through our Portland office and we are writing to them this afternoon to find out whether they have heard anything from it or not. As soon as Mr. Arper returns to Seattle, he being at present in Portland, we will have him run over and go carefully over the matter with you and put the planer in proper running order. We are satisfied that there is nothing wrong with the machine primarily and assure you now that it was not returned through any dissatisfaction with it; that it went out, as we said before, as an accommodation for a customer and if, unfortunately for us, they abused the confidence we placed in them we shall stand good for it. We shall see that the machine is perfectly satisfactory before we ask you for any money."

The matter went on this way, respondents continually expressing dissatisfaction. Appellants thereafter sent three experts at different times to adjust the machine, but the machine was still not satisfactory, until on September 10, 1904, respondents expressed themselves as "thoroughly disgusted with the same," and offered to return the machine to the appellants, which offer was refused. Soon thereafter the respondents' mill, together with the planer, was destroyed by fire. Soon thereafter this action was begun.

The contract is clear, to the effect that appellants would accept a return of the machine if it should prove unsatisfactory to the respondents. Even if the contract were susceptible of the construction which appellants now seek to place upon it, viz., that "the clause in the contract guaranteed to the defendants merely the right to determine from an inspection whether the machine were satisfactory, and by setting up in their mill defendants accepted it," the parties themselves did not so understand the contract or so construe it at the time, because on February 8, 1904, after the respondents had used or tried to use the machine for two months, appellants say: "We shall see that the machine is perfectly satisfactory before we ask you for any money." This is conclusive to our minds that the contract meant, and the

parties understood it to mean, that the machine should be satisfactory to the respondents. Where there is an agreement that an article shall be satisfactory to the buyer, "it is generally held that he [the purchaser] is the sole arbiter of the performance according to the agreement. It is not enough to show that the promisee ought to be satisfied and that his discontent is without reason." 24 Am. & Eng. Ency. Law (2d ed.), p. 1236.

See, also, 9 Cyc. 620; Benjamin, Sales (7th ed. Bennett's), page 607, and cases there cited.

It follows, of course, that dissatisfaction must be expressed within a reasonable time. 9 Cyc. 625. After carefully examining the evidence in this case and especially the letters in the record, it conclusively appears that the respondents expressed dissatisfaction from the start and clearly within a reasonable time. It is true that one of the experts sent to adjust the machine testified that, after he had made some repairs upon it, one of the respondents expressed his satisfaction. But respondents' letters before and after this time show conclusively that they were never satisfied, and that neither they, nor their employees, nor the experts sent by appellants to make the machine work, could make the machine do the quality or the amount of work it was represented to do.

We are satisfied that the lower court found the facts in accord with the weight of the evidence and that the judgment is right. It is therefore affirmed.

HADLEY, C. J., FULLERTON, CROW, and DUNBAR, JJ., concur.