[No. 10600. Department Two. March 4, 1913.]

MALCOLM McDOUGALL, *Appellant*, v. W. L. O'CONNELL et al., *Respondents*.[1]

MINES AND MINERALS—SALES—OPTION TO RESCIND — REASONABLE TIME—NOTICE—SUFFICIENCY. A contract to return the purchase price of mining property "at the end of three years," if the purchaser is dissatisfied, allows a reasonable time after the expiration of the three years to give notice of dissatisfaction; and a notice is timely where it was, within two months, mailed to the party's address, where his family resided, two weeks prior to his expected return from the interior of Alaska where he had been for some time.

SAME—OPTION TO RESCIND—CONSTRUCTION. Under an agreement to return the purchase price of mining property, within a limited time if the purchaser "is dissatisfied" with the property, he need not show reasonable grounds for his dissatisfaction.

SAME—OPTION TO RESCIND—CONDITION PRECEDENT. Under an agreement to return the purchase price of mining property, at the end of three years, if the purchaser is dissatisfied, "he keeping up his share of the assessment work," failure to meet the assessment for the last year does not forfeit the purchaser's right to rescind, where no demand was made upon him for the payment of his portion, and assessments for the two previous years had not been met until the work was done and request for payment made; no assessment work having been done the last year (MORRIS, J., dissenting).

Appeal from a judgment of the superior court for King county, Myers, J., entered April 20, 1912, upon findings in favor of the defendants, in an action on contract, after a trial to the court. Reversed.

*Benton Embree*, for appellant.

*F. C. Reagan*, for respondents.

[1]Reported in 130 Pac. 362; 131 Pac. 204.

MAIN, J.—This is an action to recover money alleged to be due upon a contract. On May 20, 1908, at Seattle, Washington, the defendant W. L. O'Connell executed and delivered to the plaintiff a writing in terms as follows:

"If Mr. McDougall is dissatisfied with the property I have sold him in Camp O'Connell, Elk county, Nevada, at the end, of three years, he keeping up his share of the assessment work, I agree to return him the amount he has paid for it, $2,500, with 10% interest. W. L. O'Connell."

Some time prior to this date, the parties had had certain negotiations, looking to the sale to the plaintiff by W. L. O'Connell of an undivided one-fourth interest in certain mining claims, situated in Elk county, Nevada. On July 28, 1908, the plaintiff, pursuant to the agreement to purchase, paid $1,000, and on the 4th day of August, 1909, $1,500. At the time of the latter payment, $300 was paid for the assessment work for the year 1909. All these sums were paid to W. L. O'Connell. When the last payment on the purchase price was made, deeds were delivered to the plaintiff, conveying the interest purchased in the mining claims, which deeds were executed by John O'Connell, the brother of W. L., in whose name the filings upon the claims had been made. On November 14, 1910, the plaintiff paid his proportion of the assessment work for that year. On May 5, 1911, W. L. O'Connell and one Cameron departed on a trip to the interior of Alaska, expecting not to return until either the month of August or September following. McDougall, the plaintiff, knew of their departure and the time of their expected return. During the time that they were in Alaska, they were at a place where there was no regular mail delivery, but upon two occasions while there mail was brought in by parties coming from the outside.

The trial court found, and there seems to be no real controversy upon this question, that the three-year limitation provided for in the contract expired on May 20, 1911, at 12 o'clock midnight. The following day being Sunday, on

Monday, May 22, 1911, John O'Connell was requested to come to the office of the attorney for McDougall, and he was there informed that McDougall was dissatisfied with the mining claims and desired the return of his money under the terms of the agreement.    On July 22, 1911, the plaintiff, knowing the time when W. L. O'Connell was expected to return from Alaska, caused to be sent to him by registered mail addressed to · his Seattle residence a notice of dissatisfaction and demand for the return of the purchase price, together with interest.    O'Connell arrived in Seattle on his return from Alaska, August 6, 1911, and on August 22, he appeared at McDougall's office, after having received the notice of dissatisfaction by registered mail.    During all of the times above mentioned, W. L. O'Connell's residence was at a place in Seattle known to McDougall, and his family were at the residence during the period of time that O'Connell was in Alaska.    As has been stated, the three years mentioned in the contract, at the end of which time McDougall might demand the return of his money, expired on May 20, 1911. McDougall did not pay his proportion of the assessment work for the year 1911, which would have amounted to the sum of $300.    The assessment work upon the claims for this year was not in fact done, and . on the first of the following January they were relocated by adverse parties.    McDougall's demand for the return of his money was not responded to by O'Connell, and this suit was brought to recover the same.    The cause was tried to the court without a jury.    At the conclusion of the trial the court found for the defendant, apparently on the ground that McDougall did not within a reasonable time after May 20, 1911, notify W. L. O'Connell of his dissatisfaction; thereupon the plaintiff appealed.

The questions presented upon this appeal are, (1) Was the notice of dissatisfaction communicated to W. L. O'Connell in time?    (2) Must the appellant show reasonable grounds for his dissatisfaction? And (3) did the appellant forfeit his

right to declare dissatisfaction by failing to meet his proportion of the assessment work for the year 1911?

The first question presented requires the interpretation of the clause "at the end of three years," as used in the contract. Under this provision the appellant could not have declared his dissatisfaction prior to the expiration of the three years mentioned, for the contract specifies otherwise. Contracts with like or similar language have been frequently construed by courts of last resort to mean that notice of dissatisfaction or demand for the return of money must be made within a reasonable time after the expiration of the time stated. "At the end of three years" in contracts of this character means within a reasonable time thereafter. *Rogers v. Burr*, 97 Ga. 10, 25 S. E. 339; *La Dow v. Bement & Sons*, 119 Mich. 684, 79 N. W. 1048, 45 L. R. A. 479.

In the *Rogers* case, the question is covered by this language:

"This contract, on the faith of which the administrator of Chambers subscribed for sixty shares of stock in the Barnesville Manufacturing Company, stipulates that if, at the expiration of three years from December 1st, 1889, the subscriber desires no longer to carry the stock, the plaintiffs in error will, 'with thirty days' notice,' pay such subscriber par value for the same. This provision gave to the subscriber the right, at the expiration of three years from the time stated, to elect whether he would keep the stock, or turn it over to plaintiffs in error, and require them to pay him therefor its par value. He had no right to make this election before the expiration of the time. The time for such election expired at midnight on November 30th, 1892, and it could not have been made until the full expiration of the time. The position that the election ought to have been made on the last moment of the last day is too absurd to seriously consider. It follows that the time for the exercise of the right was after the expiration of the three years. The word '*at*' in this contract is equivalent in meaning to '*after*.' It was held in *Annon v. Baker*, 49th N. H. 169, cited in American and English Encyclopædia of Law, vol. 1, first edition, page 893, note, that 'at the end of one year,' means 'at the expira-

tion of one full and entire year,' and that 'at,' is equivalent in meaning to 'after.' If the word 'after' is substituted for 'at' in the contract under review, there can be no doubt about the correctness of the instruction given to it in the head-note. As the election could be made after the expiration of the time limited, of course a reasonable time was allowable for this purpose."

It follows that appellant must exercise his right under the contract within a reasonable time after May 20, 1911, by giving notice to W. L. O'Connell. What would be a reasonable time depends upon all the attendant facts and circumstances. At the end of the three-year period specified in the contract, W. L. O'Connell was in the interior of Alaska where the deliveries of mail were infrequent and irregular. He was expecting to return within a period of a few months. The notice of dissatisfaction was prepared and sent to his Seattle address more than two weeks prior to the date of his return. The delay caused no prejudice. There is no showing that, had the notice been sent to Alaska, it would there have been received, or that O'Connell was in any worse position than he would have been had the notice been mailed to him immediately after the 20th day of May, 1911. Notice to John O'Connell or to the family of W. L. would be unavailing, for they were not parties to the contract. The facts not being in dispute, what would be a reasonable time becomes a question of law; and when all the surrounding facts and circumstances are considered, we think the trial court erred in holding that the notice of dissatisfaction was not given within a reasonable time.

As to the second question, the rights of the parties must be measured by the terms of the contract. The contract says that, if McDougall is dissatisfied, then the money will be repaid. It does not say that, if he is dissatisfied and has reasonable grounds for his dissatisfaction, then the money will be returned. The law on this question is well stated in 24 Am. & Eng. Ency. Law (2d ed.), p. 1236, as follows:

12—72 WASH.

"The courts have had frequent occasion to interpret contracts for the rendition of services, the sale or manufacture of articles, etc., in which it was agreed that the services should be satisfactory to the employer, or that the article should satisfy the purchaser. And where there is an agreement that an act shall be done in a manner satisfactory to the promisee, it is generally held that he is the sole arbiter of the performance according to the agreement. It is not enough to show that the promisee ought to be satisfied and that his discontent is without reason."

See, also, to the same effect: 9 Cyc. 620; *Tatum v. Geist,* 46 Wash. 226, 89 Pac. 547.

The third question is that of the failure to meet the assessment work for the year 1911. This delinquency is not sufficient to forfeit the right of the appellant to recover. It does not appear that any demand had been made upon him for the payment of his portion of the assessment work for that year. Neither of the assessments for the two previous years had been met until the work was done and request for payment made. As shown by the facts stated, the work for this year had at no time been done. By the terms of the contract, however, the appellant was entitled to the return of the money, "he keeping up his share of the assessment work." Having held the property for a period of three years, he should be required to meet his portion of the assessments for that period of time. The sum of $300 should be deducted from the total of the purchase price and interest.

The cause will therefore be reversed and remanded, with direction to the superior court to enter a judgment for the appellant for the purchase price paid, together with interest at ten per cent per annum thereon from the dates of payment, less the sum of $300, the amount of the assessment work which the appellant was required to pay for the third year.

FULLERTON, ELLIS, and MOUNT, JJ., concur.

MORRIS, J. (dissenting)—I dissent, upon the ground that keeping up his share of the assessment work was a condition precedent to appellant's right of recovery, and not having done so, his right of action failed.

## ON PETITION FOR REHEARING.

[*En Banc.* April 10, 1913.]

PER CURIAM—A petition for rehearing has been filed in this case. In the petition for rehearing, our attention is called to an error in the opinion. There we directed generally that the superior court enter a judgment for the appellant, when the direction should have been to enter a judgment for the appellant and against the respondent W. L. O'Connell only, and not against the community composed of W. L. O'Connell and Evelyn F. O'Connell, his wife. The appellant in his brief conceded that the liability upon the contract was that of the husband only. The original opinion will be modified to the extent here indicated. Otherwise the petition for rehearing is denied.