[No. 10478.   Department Two.   August 19, 1913.]

## A. W. GOULD et al., Respondents, v. R. C. McCORMICK et al., Appellants.[1]

APPEAL—EXCEPTIONS—NECESSITY.   A memorandum decision constituting a ruling upon matters taken under advisement, and in no sense a judgment, is not findings of fact, to which exceptions need be taken.

CONTRACTS—BUILDING CONTRACTS — SUPERINTENDENCE — CONSTRUCTION—TERMINATION FOR DISSATISFACTION.   An architect's contract to superintend the construction of a building to the end that the same shall be (1) strictly in accordance with the plans, (2) with good workmanship, (3) best materials, and (4) superintend construction to the entire satisfaction of the owners, and (5) make such additional drawings as might be required to secure construction in the best possible manner and to the satisfaction of the owners, does not give the owners the unqualified right to terminate the contract if dissatisfied, but only in case of reasonable grounds for dissatisfaction; since, where the language of the contract is doubtful, the latter construction will be adopted.

DAMAGES—MEASURE—BREACH OF CONTRACTS—SERVICES — PREVENTING PERFORMANCE.   Where architects employed to superintend the construction of a building were wrongfully discharged, the measure of their damages is the difference between the price fixed and the cost of performance.

MECHANICS' LIENS—RIGHT TO—ARCHITECTS.   Architects may claim a lien for plans and superintending the construction of a building, under Rem. & Bal. Code, § 1129, providing that "every person performing labor upon or furnishing material to be used in the construction . . . of any building . . . has a lien upon the same for the labor performed or material furnished."

MECHANICS' LIENS — NOTICE — EXCESSIVE CLAIM—EFFECT.   A mechanics' lien is not defeated by the fact that the notice claimed an excessive amount, where the evidence does not show either bad faith or that the claim was wilfully filed for an excessive amount.

[1]Reported in 134 Pac. 676.

Appeal from a judgment of the superior court for King county, Kauffman, J., entered November 24, 1911, in favor of the plaintiffs, in an action to foreclose a lien for architect's services. Affirmed.

*John W. Roberts,* for appellants.

*Peters & Powell,* for respondents.

MAIN, J.—This is an action upon a contract. The plaintiffs are copartners, doing business under the firm name of Gould & Champney. The defendants are husband and wife. On August 4, 1909, the plaintiffs entered into a written contract with the defendant Robert McCormick wherein it was provided that the plaintiffs were to draw plans and specifications for a nine-story building which McCormick desired to construct upon lots one and two, block 28, Maynard's addition to the city of Seattle. The contract, so far as material, was as follows:

"Second party [respondents] also agrees to take charge of and supervise the construction of the building and to faithfully superintend the same to the end that the construction may be strictly in accordance with said plans and specifications and pursued in accordance with good workmanship, and only the best materials of the several kinds specified employed or used in such construction. And the second party agrees to devote whatever time that may be necessary, and to employ at their own expense whatever assistance that may be necessary to fully superintend the construction of said building to the entire satisfaction of the first party [appellant, R. C. McCormick]. Should the first party desire a clerk of the works, then such clerk or superintendent shall be at his expense.

"The second party further agrees from time to time to supplement said plans to such additional drawings as may be necessary to interpret and fully exemplify the work, and shall be ready at all times to interpret and explain said plans and specifications or any part thereof, and shall do all work that may be necessary to reconcile any apparent confliction, and will make such additional drawings and provide such ad-

ditional specifications as first party may from time to time require, to the end that said work may be constructed in the best possible manner, economically and to the satisfaction of the first party."

For providing the plans and specifications and superintending the construction of the building, the plaintiffs were to receive five per cent of the cost thereof. Under the agreement, plans and specifications for a hotel building were prepared. The erection of the building was begun. Thereafter, and on August 18, 1910, when the building was about one-third completed, McCormick discharged the plaintiffs from further service under the contract. Subsequently the building was completed by the defendants without employing other architects. On or about December 23, 1910, this action was begun for the purpose of recovering the balance due the plaintiffs on the contract, establishing and foreclosing a lien for the same, and for an attorney's fee. The cause was tried to the court without a jury. During the trial it was stipulated that, in the event the court should enter a judgment foreclosing the lien, it should fix the amount of the attorney's fee to be allowed the plaintiffs. At the conclusion of the trial, the court took the matter of the decision under advisement. On October 18, 1911, the trial court caused to be filed in the case a memorandum decision. In this decision the court found:

"In the above entitled cause I find that there is no evidence of any acts or omissions on the part of the plaintiffs which justified their dismissal from the defendants' service or which would justify a reasonable man to suspect them of wrongdoing or incompetency. I find, moreover, that the fair cost of the structure which they were engaged to work upon and upon which their commissions are to be paid is $325,000. I find that there is no evidence which enables me to segregate the value of that part of the work done at the time of their dismissal from that part which they were bound to do in order to fulfill all of their obligations under their contract of employment. In such a case a true measure of damages is the whole sum agreed to be paid for the completed work

. . . Plaintiffs admit, however, that the completion of the contract would involve an outlay by them of $1,500, and I think this should be deducted from their whole compensation. On this basis plaintiffs would be entitled to recover five per cent of $325,000, or $16,250, less $1,500 outlay and $8,000 already paid, is $6,750, for which amount, with interest and an attorney's fee of $1,500, the plaintiffs are entitled to a lien upon the realty described in the complaint."

Thereafter, and on November 24, 1911, judgment was entered in favor of the plaintiffs for $7,239.37, and in addition thereto an attorney's fee in the sum of $1,500. The defendants appeal.

The questions which are chiefly material are: (1) Did the memorandum decision constitute findings of fact? (2) construction of the contract as to the right to terminate; (3) were there reasonable grounds for dissatisfaction? (4) the measure of damages; (5) does a right of lien exist; (6) was the notice of claim of lien valid?

I. On October 18, 1911, the trial judge caused to be filed in the cause a memorandum decision, a portion of which is above set out. To this, through inadvertence, the appellants filed exceptions as though it were findings of fact and conclusions of law. The exceptions, however, were subsequently withdrawn. No findings of fact and conclusions of law were signed and filed, unless the memorandum decision can be considered as such. It is argued that the memorandum decision constitutes findings of fact and conclusions of law, and, inasmuch as there are no exceptions thereto, there is nothing for the court to consider. But under the rule as stated in the case of *Gust v. Gust*, 70 Wash. 695, 127 Pac. 292, the memorandum decision cannot be considered as findings of fact and conclusions of law. In that case, speaking of a memorandum decision, it was said:

"It is apparent, we think, that the entry of March 29 was in no sense a judgment, nor intended as such. It was nothing more than the decision or ruling of the court upon the matters taken under advisement."

II. It is argued that, by the terms of the contract, there was reserved to the appellants the right to terminate the services of respondents whenever they might be dissatisfied, providing the dissatisfaction was not in bad faith. In other words, that there was reserved to the appellants an unqualified option to terminate the contract whenever in fact they became dissatisfied, regardless of whether or not there was any reasonable ground for such dissatisfaction. By examination of the contract, it will be seen that the building was to be constructed, (1) strictly in accordance with the plans and specifications; (2) with good workmanship; (3) with the best of materials; (4) that its construction was to be superintended to the entire satisfaction of the appellants; and (5) that such additional drawings and specifications as might be required from time to time were to be prepared by the respondents to the end that the work might be constructed in the best possible manner, economically, and to the satisfaction of the first party. These provisions specify the character of the workmanship, the character of the material, the character of the superintendence, and in addition that the building be constructed in the best possible manner, economically, and to the satisfaction of the appellants.

Where, from the language of the contract, it is doubtful whether the parties intended that one party thereto should have the unqualified option to terminate it in case of dissatisfaction, or whether the intention was to give the right to terminate only in the event of dissatisfaction based upon some reasonable ground, the contract will be construed as not reposing in one of the parties the arbitrary or unqualified option to terminate it. In other words, in cases of doubt, the contract will be construed as giving the right to terminate only when there is a reasonable ground for dissatisfaction. In *Hawkins v. Graham*, 149 Mass. 284, 21 N. E. 312, 14 Am. St. 422, speaking of a contract of the

same general character as the one here under consideration,
it was said:

"In doubtful cases courts have been inclined to construe
agreements of this class as agreements to do the thing in
such a way as reasonably ought to satisfy the defendant."

Where the contract provides that the work or material
shall be of a specific character and to the satisfaction of
one of the parties, the right to terminate exists only when
there is dissatisfaction and the same is based upon reason-
able grounds. In *Doll v. Noble*, 116 N. Y. 230, 22 N. E.
406, 15 Am. St. 398, 5 L. R. A. 554, the court was consid-
ering a contract for polishing, staining, and rubbing the
woodwork of two houses. The contract provided that the
work was to be done "in the best workmanlike manner under
the supervision of William Packard, superintendent, and to
the entire satisfaction of William Noble, the party of the
first part, owner." The trial court, in submitting the cause
to the jury, instructed them, in effect, that, while the con-
tract provided it was to be done to the owner's satisfaction,
that clause must be regarded as qualified by the other pro-
visions of the contract that it was to be done in the best
workmanlike manner, and that was the test of a correct and
full performance of the contract. Thereupon counsel for
the owner requested the court to instruct the jury that the
defendant was entitled under the contract to have the work
done to his "entire satisfaction" before the plaintiff became
entitled to final payment. To which the court responded,
"I so charge, subject to the qualification which I have al-
ready made. He must not attempt to defeat a just claim
by arbitrarily and unreasonably saying he is not satisfied.
The work must be done according to the contract." Upon
these instructions, error was predicated. The court of ap-
peals, in passing upon the question, said: "The ruling of
the court was correct."

We think that the contract in the present case did not
give to the appellants the arbitrary option to terminate it

whenever they might be dissatisfied; but that it could only be terminated providing there was some reasonable basis for such dissatisfaction. Had it been the intention to give to the appellants the unqualified or arbitrary option to terminate the contract whenever they might be dissatisfied, it would seem that that portion of the contract which describes the character of the work and material would be entirely superfluous.

The cases of *Tatum v. Geist*, 46 Wash. 226, 89 Pac. 547, and *McDougall v. O'Connell*, 72 Wash. 349, 130 Pac. 362, 131 Pac. 204, are not out of harmony with the views herein expressed; the distinction being that the contract which the court was construing in each of those cases gave the absolute or unqualified option to terminate in case of dissatisfaction; while in the present case the contract, considering all the language used, gives the right to terminate only when the dissatisfaction is based upon some reasonable ground.

III. The contract not giving to the appellant the arbitrary option to determine when he was satisfied, it becomes necessary to ascertain from the evidence whether there was any reasonable ground for dissatisfaction. While no formal findings of fact have been made upon this question, yet it appears from the written opinion of the trial judge that, in his judgment, there was no evidence justifying the dismissal of the respondents. He said:

"I find that there is no evidence of any acts or omissions on the part of the plaintiffs which justified their dismissal from the defendant's service or which would justify a reasonable man to suspect them of wrongdoing or incompetency."

The evidence in the record touching this matter is so voluminous as to make its review here utterly impracticable. It is sufficient to say that, from a consideration of the evidence, we are of the opinion that the view of the trial court was right and should be sustained.

IV. Since the contract was breached by the appellants

without just cause, it becomes necessary to determine by what standard the amount of recovery is to be measured. This measure, where the price is fixed in the contract, is the difference between the price thus fixed and the cost of performance.

In 2 Sedgwick on Damages (9th ed.), § 614, the rule is stated thus:

"Where a contract price is fixed in the contract, this becomes the standard of value of the contract, the profit being the difference between the contract price and the cost or value of performance. The application of this rule may be examined in cases of several sorts.

"In the first class of cases the plaintiff on his side undertakes to perform some act for the defendant and in return the defendant agrees to pay money for the plaintiff's act. In such a case the profit of the contract is represented by the contract price less the cost of performing the act to be done by the plaintiff."

In *Chase v. Smith*, 35 Wash. 631, 77 Pac. 1069, it is said:

"The contractor was entitled to recover for the work performed at the contract rate, and such profit, if any, as he would have made on the balance of the work had he been allowed to complete it. The respondent is to be placed in the same condition that he would have been placed in had he been permitted to proceed without interference."

In the present case the price fixed in the contract for preparing the plans and specifications and superintending the work of the construction was five per cent of the cost of the building. The approximate cost of the building was $325,000. At the time the respondents were discharged, it appears from the evidence that the cost to them of completing the contract would have been $1,500. Prior to this time they had been paid the sum of $8,000. On this basis, then, applying the rule as above stated, there was a balance due in the sum of $6,750.

V. It is contended that the court erred in entering a judgment establishing and foreclosing the lien. If a right of lien exists for plans and specifications prepared by an

architect which were used in the construction of a building, and for services of the architect in the superintendence thereof, it must be by virtue of the statute, as no such lien was known to the common law. Rem. & Bal. Code, § 1129 (P. C. 309 § 53), provides:

"Every person performing labor upon or furnishing material to be used in the construction, alteration or repair of any mining claim, building . . . has a lien upon the same for the labor performed or material furnished . . ."

The courts of many of the states have been called upon to construe statutes containing substantially the same language, for the purpose of determining whether or not the right of lien existed for plans and specifications and superintendence of the architect. While the decisions upon this question are by no means harmonious, the great weight of authority, as well as the better reason, appears to support the view that the lien exists where the language of the statute is general. It will be noted that the language of the statute above quoted is general and comprehensive in its terms. Had the legislature intended it not to be sufficiently broad to include the labor of the architect in preparing plans and specifications according to which the building was constructed, and in superintending the construction thereof, it would doubtless have made use of more restrictive terms. In Phillips on Mechanics' Liens (3d ed.), § 158, the views of the author are expressed to this effect:

"The labor and skill of an architect and superintendent of work upon a building are properly a part of the expense of erecting a building, and not unfrequently an indispensable and highly valuable part. As an item of such expense they enter into and help to form the value of the building, and there is no sound reason in the nature of things why the person who performs such labor and furnishes such skill should not receive the same protection as the carpenter or mason. Hence, under a statute which provides that 'whoever performs labor or furnishes materials . . . for erecting . . . a house shall have a lien,' etc., and 'any

person entitled to a lien as aforesaid shall make an account in writing of the item of labor, skill, materials,   .   .   .   or either of them as the case may be,' etc., it includes persons who furnish plans and specifications for and superintend the work."

In *Hughes v. Torgerson,* 96 Ala. 346, 11 South. 209, 38 Am. St. 105, 16 L. R. A. 600, under a statute which gave a right of lien for "work or labor upon a building or improvement on land," it was held that this language was broad enough to include the architect who prepares the plans and specifications and superintends the erection of the building. It was there said:

"An architect who prepares the drawings, plans and specifications for a building, and superintends the erection thereof, may as truly be said to perform labor thereon as any one who takes part in the work of construction. That he is within the protection of the statute, is a proposition well supported by adjudications upon other similar statutes."

In the case of *Knight v. Norris,* 13 Minn. 473, under a statute which gave a right of lien to "whoever performs labor or furnishes material in constructing, altering or repairing a building shall have a lien to secure the payment of the same," it was held that an architect was entitled to a lien for plans and specifications and superintending the construction of a building. It was there said:

"The labor and skill of an architect and superintendent of the work upon a building are a part of the expense of erecting a building, and not unfrequently an indispensable and highly valuable part. As an item of such expense, they enter into and help to form the value of the building, and we can conceive of no sound reason in the nature of things why the person who performs such labor, and furnishes such skill, should not receive the same protection as the carpenter, the mason, the lumber dealer, or the hardware merchant; and as before remarked, we are of opinion that the services for which the plaintiff claims a lien are covered by the statute."

To the same effect see, also, *Spaulding v. Burke,* 33 Wash. 679, 74 Pac. 829; *Parsons v. Brown,* 97 Iowa 699, 66 N. W.

880; *Knight v. Norris, supra; Gardner v. Leck,* 52 Minn. 522, 54 N. W. 746; *Van Dorn v. Mengedoht,* 41 Neb. 525, 59 N. W. 800; *Mutual Benefit Life Ins. Co. v. Rowand,* 26 N. J. Eq. 389; *Stryker v. Cassidy,* 76 N. Y. 50, 32 Am. Rep. 262; *Bank of Pennsylvania v. Gries,* 35 Pa. 423; *St. Clair Coal Co. v. Martz,* 75 Pa. 384; *Phoenix Furniture Co. v. Put-In-Bay Hotel,* 66 Fed. 683.

While, as already indicated, the authorities are not unanimous in supporting this view, yet a critical examination of the cases which take the opposite view will show that the statutes being construed in some of them were less general in terms than is the statute of this state.

VI. Finally, it is claimed that the notice of claim of lien was filed for an excessive amount, and for that reason the lien must fail. In support of this contention, the case of *Robinson v. Brooks,* 31 Wash. 60, 71 Pac. 721, is cited. In that case it was held that, where nonlienable items had been wilfully included in the lien notice to such an amount that, when taken in connection with the facts and circumstances of the case, clearly established bad faith, the whole lien should fail. The rule of that case is not applicable to the facts here presented. The evidence does not show either bad faith or that the claim for lien was wilfully filed for an excessive amount.

The judgment will be affirmed.

MOUNT, MORRIS, ELLIS, and FULLERTON, JJ., concur.