[No. 21742. *En Banc.* March 31, 1930.]
WARREN, MCKERNAN & EVERS, *Appellant,* v. EDWIN IVEY *et al., Respondents.*[1]

[1]Reported in 286 Pac. 27.

*Grinstead, Laube & Laughlin* and *R. John Lichty,* for appellant.

*Shank, Belt & Fairbrook,* for respondents.

PARKER, J.—The plaintiff, Warren, McKernan & Evers, a corporation, a real estate brokerage concern, seeks recovery of a commission claimed to be owing to it in pursuance of a commission contract entered into with the defendants Ivey and wife for procuring for them a prospective lease tenant for property owned by them situated in Seattle. A trial upon the merits in the superior court for King county, sitting without a jury, resulted in findings and judgment denying to the plaintiff recovery, from which it has appealed to this court. The cause is before us upon the admitted commission contract and the trial court's findings, none of the evidence being before us.

The commission contract is in the form of a letter addressed to appellant, and, in so far as need be here noticed, reads as follows:

"April 7, 1927.
"Warren, McKernan & Evers,
"4544 University Way,
"Seattle, Wash.
"Gentlemen:
"Confirming my recent conversation with your Mr. Evers, in consideration of services to be rendered, I hereby give to your firm an exclusive right, for a period of 90 days from date, to negotiate a lease for the rental of my property on University way, being lots 2 and 3, block 8, University Heights addition, on the following terms and conditions, to wit:
"The lessee to agree to pay me in a lease, which shall be executed, an annual rental of $6,000 payable $500 monthly, in advance, for the full term of the ninety-

nine years; the lessee further to pay all taxes and assessments that may, from the date of leasing the property, become a lien on the above described property; also to pay all water bills, light bills, fire insurance, and all other bills of whatsoever kind and nature which might incumber the property.

"The lessee to put up $5,000 cash deposit on the lease, said deposit to draw interest at the rate of 5% per annum, to be deducted from the rent of the last month in each year; lessee to build a permanent building on the premises to cost not less than $40,000, said building to be completed on or before ten years from date of lease, at which time the $5,000 deposit is to be returned. All buildings on the premises at the expiration of the lease to revert to the lessor. . . .

"It is understood and agreed that the lessee, prior to beginning of construction of said building as referred to herein, shall furnish to the lessor herein, a surety bond for the faithful completion of said building to be free and clear from liens and incumbrances of any nature whatsoever, for the full cost of the building in the amount of $40,000.

"In the lease to be executed, the lessee shall have an option of purchasing the above described property at any time within five years of the date of execution of the lease at the price of $90,000, one-half cash and the other half by a first mortgage of 6% per annum, payable on or before five years; any time during the second five years, during the life of the lease, the lessee shall have an option to purchase the above described property at $100,000, one-half cash and one-half on or before five years, secured by a first mortgage at 6% per annum. . . .

"The proposed lessee, his successor or assigns, under this agreement shall be a party of good standing and acceptable to the lessors.

"In consideration of services above mentioned we agree to pay you the commission of $3,225 in cash when the lease is signed by both parties.

"Yours very truly,
"ELIZABETH IVEY,
"EDWIN IVEY."

As to what was done by appellant under this contract and as to respondents' refusal to accept the proposed lessee, we quote from the court's findings as follows:

"(VII) That thereafter plaintiff did find a party of good standing, one, H. W. Soules, who was ready, able and willing to enter into a lease of said premises upon the terms and conditions as set forth in the listing contract, and the said H. W. Soules signed an earnest money receipt in which he did so agree to enter into a lease, and deposited with plaintiff $100 as earnest money to evidence his good faith.

"(VIII) That thereafter, the plaintiff introduced the said H. W. Soules to the defendants, and the defendants made no objections to the said H. W. Soules. and agreed that a lease should be prepared leasing the property to the said H. W. Soules, upon the terms and conditions as set forth in the said listing agreement.

"(IX) That thereafter, the said H. W. Soules caused his attorney to prepare a form of lease which he desired to have executed by the defendants, and delivered the same to plaintiff for transmittal to the defendants.

"(X) That said proposed form of lease did not conform to the terms of the listing agreement in several respects, and the said form of lease, as prepared, indicated that the lessee would be a corporation and not the said H. W. Soules.

"(XI) That thereafter, Volney P. Evers, one of the stockholders and officers of plaintiff corporation, delivered said proposed form of lease to the defendants, and the defendants examined the same and were not satisfied therewith, and they particularly objected to the fact that the lessee in the proposed lease was an unnamed corporation, and indicated that they desired the lease to be executed by the said H. W. Soules.

"(XII) That said H. W. Soules thereafter informed the defendants that he would rather have the lease run to a corporation, which he was to organize, but that he would, if the defendants desired the same, execute the lease in his individual capacity, and he requested the defendants to have their attorney prepare

a form of lease which would be acceptable to them, and that if the same conformed to the listing agreement, he would execute such lease.

"(XIII)   That thereafter, for a period of several days, a member of the plaintiff corporation repeatedly called the defendants and requested that they prepare such lease and present it to the said H. W. Soules.

. . .

"(XV)   That by reason of the conduct of the plaintiffs the defendants became suspicious, and before a lease which was satisfactory to defendants was presented for signature announced to the plaintiffs that the said H. W. Soules was not acceptable to them and they would not execute a lease to him."

It is contended in behalf of appellant that the provision of the commission contract that "the proposed lessee . . . shall be . . . acceptable to the lessors" did not give to respondents the unqualified privilege of deciding that Soules was not acceptable to them as lessee.  It is argued that the contract and the facts found by the court demonstrate that respondents were in law bound as reasonable persons to accept Soules as lessee and execute to him a lease in accordance with the contract.

There is a class of contracts wherein a similarly expressed reserved election right in a party thereto will not permit him to exercise such election without fair reason therefor, though the terms of the contract, read literally, indicate otherwise.  An ordinary building construction contract providing that the structure shall be according to agreed specifications and to the satisfaction of the one for whom it is to be constructed is of this class, and the law will not permit him to arbitrarily say he will not accept and pay for the building when it is in fact constructed for him according to agreed specifications.

There is another class of contracts wherein a simi-

larly expressed reserved election right in a party thereto will permit him to exercise such election without right of inquiry by the other party as to the reasonableness of such election. A contract to construct or furnish a work of art solely to gratify the individual taste or preference of the one for whom it is to be constructed or furnished is of this class.

In dealing with provisions of this nature in contracts falling clearly within one or the other of these two classes, the courts have not usually found much difficulty in determining the right of election so reserved; but when it comes to determining such right in terms reserved in a contract of doubtful classification between these two classes, the decisions of the courts do not seem to furnish any rule capable of any sort of formulation in general terms.

The case before us is manifestly somewhere between these two classes. Here, we have a contemplated lease contract which may run for a period longer than the lifetimes of those who would become parties to it. True, it does not involve individual taste or preference such as is sought to be satisfied in the acquisition of a work of art. On the other hand, it does not involve any utilitarian purpose to be certainly accomplished as a finished product or a finished business transaction during the lifetimes of those who would be parties to it. It contemplates numerous dealings between the parties covering a long period of time, as to which dealings there is manifestly opportunity for numerous differences of opinion to arise between them as to their respective rights.

We are of the opinion that the right of personal choice of a lessee reserved in respondents by the express terms of the commission contract is substantially of the same nature as it would have been had the commission contract been for the furnishing to respond-

ents of a work of art. We do not mean to say that the choice of a lessee by respondents in this proposed lease, as specified in the commission contract, is or would be a choice to gratify their personal artistic taste; but it manifestly is a choice in which an equally indefinable personal preference may well be their controlling consideration, in view of the nature of the proposed lease.

■ Some contention is made in behalf of appellant rested upon the theory that respondents accepted Soules as a proposed lessee. This is rested upon the trial court's finding No. VIII, above quoted. There might be some ground for this contention if upon that supposed acceptance of Soules as lessee he had also then agreed to become such lessee. But he did not do so. Instead he offered a proposed lease which was not in accordance with the proposed lease which appellant was employed to procure for respondents. Plainly, we think respondents' election to accept or reject Soules as a proposed lessee remained open to them; because their minds and the mind of a proposed lessee did not meet at any time.

The judgment is affirmed.

MITCHELL, C. J., FULLERTON, FRENCH, and HOLCOMB, JJ., concur.

BEALS, J., concurs in the result.

MILLARD, J. (dissenting)—I dissent. I cannot agree that the landlord may arbitrarily and capriciously exercise the option to refuse to enter into a lease if the proposed lessee is not acceptable or satisfactory to the landlord. That the proposed lessee was not acceptable or satisfactory to the landlord, is an affirmative defense imposing upon the landlord the burden of showing that his reasons for refusing to contract with the proposed lessee are of a substantial kind and are such as might

properly be a part of the consideration for which the landlord leases his property.

The facts found by the court are summarized as follows:

The parties herein entered into a contract under which the appellant obligated itself to produce a lessee ready, willing and able to enter into a lease of respondents' property. Another condition of the contract was that the proposed lessee, his successors or assigns, was to be a party of good standing and acceptable to the lessors. Appellant produced a party of good standing who was ready, willing and able to enter into a lease of the premises upon the terms set forth in the listing contract. No objections were made by respondents to the proposed lessee when he was introduced to them. They agreed to the preparation of a lease upon the terms recited in the listing agreement. The form of lease prepared by Soules' (the proposed lessee) attorney did not conform to the terms of the listing agreement, as it provided that a corporation, not Soules, would be the lessee. The respondents indicated to appellant that they desired the lease to be executed by Soules. Soules preferred that the lease run to a corporation which he was to organize, but he informed the respondents that, if they would prepare a lease acceptable to them and conforming to the terms of the listing agreement, he, Soules, would execute the lease in his individual capacity. Appellant was later informed by respondents that Soules was not acceptable to them. While Soules was ready, willing and able to enter into the lease and was a party of good standing, he was rejected by the respondents as not acceptable to them because of their suspicions aroused by the conduct of the appellant.

"That by reason of the conduct of the plaintiff the defendants became suspicious, and before a lease which

was satisfactory to the defendants was presented for signature announced to the plaintiffs that the said H. W. Soules was not acceptable to them and they would not execute a lease to him.''

What those suspicions were, the findings do not disclose. The only basis of the suspicions of respondents is that, following the rejection of the form of lease proposed by Soules and subsequent to the request of Soules that respondents prepare a lease,

'' . . . thereafter for a period of several days, a member of the plaintiff corporation repeatedly called the defendants and requested that they prepare such lease and present it to the said H. W. Soules.''

To determine the validity of respondents' defense that the proposed lessee was not acceptable to them, we must ascertain the meaning of the provisions of the contract under which the appellant engaged to produce a lessee who was ready, willing and able to enter into a lease, of good standing and acceptable to the respondents. The question presented, that of construction, is no different than the question of construction arising when one of the parties to a contract agrees that the performance on his part shall be satisfactory to the other party.

The majority opinion holds that the respondents were the sole judges as to whether the appellant performed to the satisfaction of the respondents, and the honesty of the respondents' decision can not be questioned.

Appellant argues that the word ''acceptable'' did not give to the respondents an arbitrary option, at any time prior to the signing of the lease, to refuse to enter into a leasing agreement with Soules and to refuse to pay a commission by merely stating that the proposed lessee was not acceptable; that in refusing to accept the proposed lessee the respondents acted arbitrarily

180

and capriciously; that the respondents did not, as required by the contract, exercise good faith and honest judgment in passing upon the acceptability of Soules.

Appellant's contention suggests two constructions:

(a)   The respondents would be the sole judges as to the acceptability of Soules, but in making their decision they must act honestly and in good faith.

(b)   Upon the respondents would be imposed the duty to act reasonably.   That is, if the performance would be satisfactory or acceptable to a reasonable man, the contract has been performed to the satisfaction of the respondents.

The construction that the respondents' judgment, whether honestly or dishonestly exercised, is determinative of whether they are or are not satisfied with the appellant's performance or whether the proposed lessee was acceptable to them, cannot be maintained on principle.

"By the terms of the contract, the mental state of one of the parties to the contract, or a third party, may be selected as the condition upon which performance depends.   The contract may provide that performance is to be to the satisfaction of the adversary party and if such provision is to be treated literally, the right to compensation of the party who has performed, depends upon the satisfaction of the adversary party.   The courts are strongly inclined to treat such a covenant outside of matters involving personal taste as a covenant to perform in such a way that a reasonable man would be satisfied.   While the contract might be so worded that a declaration by the adversary party, to the effect that he was dissatisfied, might be conclusive, it would be difficult to find consideration for such a promise.   A transaction of this sort would amount to little more than an offer which was to be accepted after performance, on the one side, by acceptance as satisfactory performance, on the other side." Page on Contracts, vol. 5, p. 4598, § 2617.

In construing contracts, the primal consideration is the intention of the parties. Was it the intention of the parties in the case at bar that the proposed lessee should in fact be acceptable to the respondents—that the respondents should in fact be satisfied? Unless the judgment of respondents was honestly rendered, their judgment did not determine that they were not satisfied or that the proposed lessee was not acceptable to them.

Counsel for respondents argue that,

"To obtain the general rule of law as to what the words 'satisfactory' or 'acceptable' mean in a contract, it is not necessary to go outside of the decisions of this court. The law as laid down by this court is that in certain kinds of contracts the words 'satisfactory' or 'acceptable' mean satisfactory or acceptable to a reasonable person (*Gould v. McCormick,* 75 Wash. 61, 134 Pac. 676, Ann. Cas. 1915A 710, 47 L. R. A. [N.S.] 765), while in another class of contracts the words 'satisfactory' or 'acceptable' mean that the court will not go into the question of whether or not the person to be satisfied was arbitrary or capricious. *Tatum v. Geist,* 46 Wash. 226, 89 Pac. 547; *McDougall v. O'Connell,* 72 Wash. 349, 130 Pac. 362, 131 Pac. 204. The only difficulty with the rule is to determine into which class an agreement to produce *an acceptable lessee falls.*"

In *Tatum v. Geist,* 46 Wash. 226, 89 Pac. 547, and other cited cases, the contracts were so worded that an expression of dissatisfaction by the promisee was held conclusive in each case.

"The difficulties which arise in dealing with provisions of this sort are to a large extent questions of construction. Since the courts prefer to construe a contract so as to give it legal effect if possible, they prefer to construe such a provision, if possible, so as to require actual bona fide dissatisfaction on the part of the adversary party as a condition precedent to his evading liability thereunder. Even in contracts which are personal in their nature, or which involve matters

of personal or artistic taste, this principle has been applied, and the party to whose satisfaction performance is to be made can not evade liability by alleging that he is dissatisfied if it can be shown that in fact he is satisfied. . . . In contracts which are not personal in their nature, or which do not involve matters of personal or artistic taste, there is no doubt that genuine dissatisfaction is necessary; but whether such contracts are to be so construed that a genuine dissatisfaction on the part of the adversary party is sufficient to enable him to avoid liability, or whether such provision is merely equivalent to a covenant for full and complete performance, is a question upon which there is a conflict of authority." Page on Contracts, vol. 5, p. 4602, § 2619.

"If the dissatisfaction is genuine, the question is presented whether this alone will prevent liability from existing, or whether the dissatisfaction must not only be genuine, but must also be caused by such omissions or defects as would cause a reasonable man to be dissatisfied. This depends in part upon the nature of the contract. If the subject-matter of the contracts involves personal taste or feeling, dissatisfaction, if genuine, prevents liability from existing, even if a reasonable man under similar circumstances would have been satisfied. . . . Thus, a contract for furnishing roofing tile of a rare and peculiar color, or for making a suit of clothes to the satisfaction of the adversary party, is not performed unless he is satisfied. If the person for whom the clothes are made is dissatisfied in good faith, he is not bound to pay therefor, although his dissatisfaction is unreasonable, and although he refuses to try them on for alterations after they have been made. In applying the principle that genuine dissatisfaction is sufficient, whether reasonable or not, if the contract provides for a subject-matter involving personal taste, a contract for personal service is generally regarded as a contract in which the personal element is material; and, accordingly, while it is necessary that dissatisfaction should be genuine, it is not necessary that it should be reasonable. Questions of this sort in contracts for personal service usually arise

under provisions which reserve to the employer the right to terminate the contract if he is dissatisfied; and accordingly such questions are discussed in that connection.'' 'Page on Contracts, vol. 5, p. 4603, § 2620.

''If the subject-matter of the contract does not involve personal taste or feeling, or any personal element, there is a conflict of authority on the question of whether a genuine but unreasonable dissatisfaction will prevent liability from existing under the contract. Some authorities hold that even in cases of this class a genuine dissatisfaction will prevent the party from being liable upon the contract, even if a reasonable man would have been satisfied.'' Page on Contracts, vol. 5, p. 4605, § 2621.

See, also, 13 C. J., pp. 675-678, for a review of the authorities on the question presented by this appeal.

In *Diamond v. Fay*, 23 Cal. App. 566, 138 Pac. 933, a case very similar to the one at bar, the defendant owner of land contracted with plaintiff real estate broker under which the latter was authorized in writing to find a purchaser for the property or a tenant who would lease it for five or ten years. Pursuant to the authority so given, the broker found a person who was ready, able and willing to rent and lease the property for a term of ten years at the required monthly rental. The defendant refused to enter into any lease. Under the terms of the contract between the broker and the land owner, the prospective tenant was required to furnish a written statement showing his financial ability. The defense of the land owner to the action by the broker for the commission was that the written financial statement was not made.

Under the rule that if evidence is shown in the record which will support the findings of the trial court the judgment must be upheld, the judgment in favor of the defendant was affirmed on appeal. The record clearly disclosed that the proposed tenant did not make the written statement and did not produce satisfactory

evidence of his ability to respond to the obligations of the lease which he proposed to make with the defendant.

While not necessary to a determination of the question before it, the court stated that the option to refuse to contract with the person produced by the broker, if such person were not satisfactory to the landlord, may not be arbitrarily or capriciously exercised. The court said:

"The engagement of a real estate broker who proposes to secure a tenant for an owner of real property is that he will present a satisfactory person who is ready, able and willing to enter into such a lease as is proposed to be made by the owner. The business to be conducted in the leased premises must also be legitimate and lawful. It has been held that the requirement as to the agent's obligation in the matter of a lease is not different from that assumed where the purpose of the agency is to procure a purchaser instead of a tenant. *Tanenbaum v. Boehm*, 202 N. Y. 293, 95 N. E. 708. There is some ground to doubt the legal correctness of this holding, however, as there are reasons why a landlord might with propriety refuse to enter into an engagement to lease his property to an individual, notwithstanding that such individual in a strictly commercial sense might be ready, able and willing to enter into a lease of the kind designed to be executed. The reputation of the person might be such as to entitle the landlord to urge as a substantial reason that the proposed tenant was not satisfactory to him. Other conditions than that imagined for the purpose of illustration might be presented which would give to the landlord the option to refuse to contract with the person produced by the broker. *Such reasons are sufficient, if of a substantial kind and such as may properly be deemed to be a part of the consideration for which the landlord lets his property; they must amount to something more than the satisfaction of mere notion or caprice. Mullally v. Greenwood, et al.*, 127 Mo. 138, 29 S. W. 1001, 48 Am. St. Rep., 613. However, as the case is presented on the evidence shown in the record, it

does not become necessary to apply any but the standard rule affecting the matter as to when an agent employed to sell real property may be said to have earned his commission.''

The listing agreement in question provided for a lease for ninety-nine years. The lessee was required to deposit five thousand dollars, ten months' rental. The lessee was also required under the agreement to construct a permanent building on the premises to cost not less than forty thousand dollars, the structure to be completed on or before ten years from date of lease, at which time the five thousand dollars' deposit was to be returned. The lessee was to have an option to purchase the property at any time within five years at a price of ninety thousand dollars, and at any time during the second five-year period at a price of one hundred thousand dollars. The appellant produced a lessee ready, willing and able to enter into a lease upon the foregoing terms and the said proposed lessee was a party of good standing, but was not ''acceptable'' or satisfactory to the respondents. The terms and conditions of the leasing agreement are to the leasing agreement as the plans and specifications of a building are to the building contract. In principle the case at bar differs not from *Gould v. McCormick,* 75 Wash. 61, 134 Pac. 676, Ann. Cas. 1915A 710, 47 L. R. A. (N. S.) 765. In that case the contract provided that the building was to be constructed,

''(1) Strictly in accordance with the plans and specifications; . . . (4) that its construction was to be superintended to the entire satisfaction of the appellants; and (5) that such additional drawings and specifications as might be required from time to time were to be prepared by the respondents to the end that the work might be constructed in the best possible manner, economically and to the satisfaction of the first party.''

We said:

"These provisions specify the character of the workmanship, the character of the material, the character of the superintendence, and in addition that the building be constructed in the best possible manner, economically, and to the satisfaction of the appellants. Where, from the language of the contract, it is doubtful whether the parties intended that one party should have the unqualified option to terminate it in case of dissatisfaction, or whether the intention was to give the right to terminate only in the event of dissatisfaction based upon some reasonable ground, the contract will be construed as not reposing in one of the parties the arbitrary or unqualified option to terminate it. . . . We think that the contract in the present case did not give to the appellants the arbitrary option to terminate it whenever they might be dissatisfied; but that it could only be terminated providing there might be some reasonable basis for such dissatisfaction. Had it been the intention to give to the appellants the unqualified or arbitrary option to terminate the contract, whenever they might be dissatisfied, it would seem that that portion of the contract which describes the character of the work and material would be entirely superfluous.

"The cases of *Tatum v. Geist*, 46 Wash. 226, 89 Pac. 547, and *McDougall v. O'Connell*, 72 Wash. 349, 130 Pac. 362, 131 Pac. 204, are not out of harmony with the views herein expressed; the distinction being that the contract which the court was construing in each of those cases gave the absolute or unqualified option to terminate in case of dissatisfaction; while in the present case the contract, considering all the language used, gives the right to terminate only when the dissatisfaction is based upon some reasonable ground."

The contract did not give to the respondents the arbitrary option of determining the acceptability of the proposed lessee, hence, if no reasonable ground for dissatisfaction existed, the judgment should be reversed. The court definitely found that the appellant produced a party ready, willing and able to enter into the lease

according to its terms and that the proposed lessee was a party of good standing. The only finding of dissatisfaction is that the respondents became suspicious because members of appellant firm importuned the respondents to prepare and submit the lease that respondents stated they desired executed by Soules. That suspicion had no reasonable basis. Reasonable ground for dissatisfaction has not been shown.

"Other authorities hold that a provision in a contract not involving personal taste or feeling, or any personal element, to the effect that it is to be performed to the satisfaction of the adversary party, means only that the performance must be such that the adversary party, if a reasonable man, would be satisfied therewith. Accordingly, the fact that the adversary party is in fact not satisfied does not discharge his liability under this theory, if it is found that a reasonable man would have been satisfied with like performance. While this theory furnishes ample protection against unreasonable conduct on the part of the adversary party, it practically eliminates from the contract the provision that the contract is to be performed to the satisfaction of the adversary party, and it enables the party who has performed the contract to recover as though such words were not included therein. Among contracts to which this principle applies, are: . . . A contract to furnish a good and satisfactory title to real estate is performed by furnishing a marketable title. Similar results have been reached under a contract to furnish a satisfactory lease." Page on Contracts, vol. 5, p. 4608, § 2622.

The contract herein does not involve a question of individual taste or sentiment, but relates to that which is desirable because of its commercial value, a ninety-nine year lease of a building with an option to purchase within a certain period of time, therefore the respondents were required to act in good faith and were required to be honestly dissatisfied. Upon them was imposed the duty of acting reasonably. If appellant's

performance would have been satisfactory, or if the proposed lessee would have been acceptable to a reasonable man, the contract was performed to the satisfaction of the respondents.

"The courts generally have recognized two rules upon this question. In contracts involving personal taste—of which an agreement on the part of one party to paint a portrait of the other is a commonly cited example—the person to be satisfied may refuse to accept the tendered performance as performance, without showing a substantial reason on which to ground his dissatisfaction. So also it has been held that nothing more than dissatisfaction is sufficient to refuse to accept the tendered performance where the contract is without express conditions as to the manner in which the work is to be performed and the person refusing to accept acts fairly. But the foregoing rules are not favored in law, and the courts, with substantial unanimity, hold that, where the duties of the parties with respect to performance are specifically provided in the contract, dissatisfaction as a ground for its termination will not be recognized unless there is a substantial ground for dissatisfaction, and that this question is for the determination of the trier of the facts." *Yarno v. Hedlund Box & Lumber.Co.*, 129 Wash. 457, 225 Pac. 659; 227 Pac. 518.

Under the facts as found by the trial court, a reasonable man would have been satisfied, therefore the cause should be remanded with directions to the superior court to enter judgment in favor of the appellant according to the prayer of its complaint.

MAIN and TOLMAN, JJ., concur with MILLARD, J.