· [No. 33546. Department One. March 28, 1957.]

WILLARD G. PLATTS *et al.*, *Appellants*, v. C. F. ARNEY *et al.*, *Respondents.*[1]

¹Reported in 309 P. (2d) 372.

 

*Wright, Booth & Beresford,* for appellants.

*Kahin, Carmody & Horswill,* for respondents.

DONWORTH, J.—This suit was brought to recover damages for breach of a contract for the sale and exchange of several parcels of real and personal property. The trial court originally entered judgment for defendants on the ground that the contract was too indefinite and did not comply with the statute of frauds. On plaintiffs' appeal, this court reversed the judgment and remanded with directions to the trial court to make findings of fact upon the issues presented by the pleadings and evidence. *Platts v. Arney,* 46 Wn. (2d) 122, 278 P. (2d) 657 (1955). Pursuant to this decision, the trial court received evidence and heard argument on the issue of damages and entered judgment for plaintiffs in the amount of forty-five hundred dollars.

Plaintiffs again appeal, presenting only one question for our consideration: Did the trial judge apply the proper measure of damages for the breach of contract? The question is purely one of law, since both parties accept the valuations placed upon the property involved by the trial court, and the other figures involved were agreed upon by stipulation of the parties. We shall refer to Willard G. Platts and W. G. Platts, Inc., a Washington corporation, as appellant, and to C. F. Arney and Betty E. Arney, his wife, as respondent.

On June 21, 1952, the parties entered an "exchange contract" in which appellant promised to transfer to respondent a residence, a fuel yard and fuel business, and an inventory of fuel. The contract placed a total value on this property of one hundred thirteen thousand dollars. Respondent agreed to transfer to appellant a store property (subject to a lease which was to be assigned to appellant), a trailer court, a chattel mortgage, and a conditional sale contract. The contract placed a total value of $49,834.37 on respondent's prop-

erty. The difference in value between the properties to be exchanged was to be represented by contracts of sale in which appellant was vendor and respondent vendee. The contract designated a "closing agent," to whom both parties promised to deliver the necessary instruments. The agent was authorized to effectuate the exchange by delivering such instruments on August 1, 1952.

The closing agent was also the broker who had first brought the parties together. Relative to his commission, the contract provided:

"If either party shall fail to furnish good title, or to perform or comply with his part of this contract within the time or manner specified, the aggregate of such commissions shall be paid by the defaulting party immediately after the occurrence of the default, and the other party shall be released from all liability for commission."

(The parties stipulated that if the contract had been performed, appellant would have been obligated to pay a commission of five thousand dollars.)

In preparing to perform under the contract, appellant made necessary expenditures for telephone calls, attorney fees, traveling expenses, secretarial help, rent on a new house, water and garbage collection, moving of household furniture, and accountant fees. In addition, appellant suffered a loss in his fuel business by retaining all the employees while reducing the volume of inventory in order to place it at the level specified in the contract. It was stipulated that appellant's expenditures and losses incurred in preparing to perform the contract amounted to fifteen hundred dollars.

On July 31, 1952, respondent notified appellant that he "rescinded" the exchange contract because of appellant's failure "to comply with the terms and provisions thereof." Appellant's suit for damages for this breach of contract followed.

The trial court, in computing the damages to appellant, adopted the basis of awarding him the net profit or gain he would have received had the contract been performed. The court did this by arriving at a reasonable market value for

each item of property to be exchanged and comparing this figure with the value assigned to the item in the contract. The court found that appellant's property was worth $14,500 less than the amount fixed by the contract, and that respondent's property was worth $5,000 less. This left appellant with what we may call a gross profit of $9,500.

From this amount, the court subtracted $5,000, which appellant would have had to pay as a broker's commission in order to complete his own performance under the contract. The $1,500 appellant expended in preparing to perform also represented part of his own cost of performance, but was *not* deducted from his gross profit for the reason that he had actually spent it.

Judgment was entered for $4,500, representing the net profit appellant would have made under the contract.

The following table illustrates the court's method of ascertaining the damages:

| | Respondent's Property | | |
|---|---|---|---|
| | Value Fixed in Contract | Value Found by Court | Overvaluation in Contract |
| Trailer Court ....... | $10,000 | $ 7,500 | $ 2,500 |
| Store Property ...... | 25,000 | 22,500 | 2,500 |
| | | | $5,000 |
| | Appellant's Property | | |
| Fuel Yard .......... | $80,000 | $68,500 | $11,500 |
| Residence .......... | 15,000 | 12,000 | 3,000 |
| | | | $14,500 |

Appellant's Gross Gain

$14,500
—5,000
──────
$ 9,500
══════

Appellant's Net Gain (Damages)

(Computed by deducting from the gross gain the amounts appellant would necessarily have spent in performing his part of the contract: $1,500 for preparatory expenses plus $5,000 for the broker's fee. However, since appellant *actually spent* the $1,500, that amount is not deducted.)

$9,500
—5,000
──────
$ 4,500
══════

Appellant urges that the court should have awarded him the amount by which his own property was overvalued in

the contract, $14,500, plus $1,500 for his preparatory expenses, or a total of $16,000.

 The purpose of awarding damages for breach of contract is neither to penalize the defendant nor merely to return to the plaintiff that which he has expended in reliance on the contract. It is, rather, to place the plaintiff, as nearly as possible, in the position he would be in had the contract been performed. He is entitled to the benefit of his bargain, *i.e.*, whatever net gain he would have made under the contract. *Munson v. McGregor*, 49 Wash. 276, 94 Pac. 1085 (1908); *Herbert v. Hillman*, 50 Wash. 83, 96 Pac. 837 (1908); *Herrett v. Wershnig*, 170 Wash. 417, 16 P. (2d) 608 (1932); *Hardinger v. Till*, 1 Wn. (2d) 335, 96 P. (2d) 262 (1939); Williston on Contracts, § 1338; McCormick on Damages, § 137.

 The plaintiff is not, however, entitled to more than he would have received had the contract been performed. If the defendant, by his breach, relieves the plaintiff of duties under the contract which would have required him to spend money, an amount equal to such expenditures must be deducted from his recovery. *Gould v. McCormick*, 75 Wash. 61, 134 Pac. 676 (1913); *Robbins v. Seattle Peerless Motor Co.*, 148 Wash. 197, 268 Pac. 594 (1928); *Rathke v. Roberts*, 33 Wn. (2d) 858, 207 P. (2d) 716 (1949); Restatement, Contracts, §§ 329, 333, 335; McCormick on Damages, § 143.

 Appellant claims to be entitled to recover the $14,-500 by which his property was overvalued in the contract, irrespective of the fact that respondent's property was overvalued by $5,000. In other words, he urges that his gross gain should be $14,500 rather than the $9,500 arrived at by the court. To uphold this claim would be to award appellant $5,000 more than he would have received had the contract been performed. The numerous cases cited by appellant in support of his argument on this point all deal with fraudulent misrepresentation, where the measure of damages is the difference between the actual value of the prop-

erty and its value as represented by the defendant. These cases are not pertinent to the one before us.

■ Appellant also urges that the court should not have deducted from his gross gain the $5,000 he would have had to pay as a broker's fee. He relies on the contract provision, quoted above, that the defaulting party should pay all broker's commissions. That provision, however, has no bearing on the damages appellant suffered from respondent's breach; it merely places the burden of paying the broker on the defaulting party. If appellant had elected not to sue, the provision would have freed him of indebtedness to the broker. Since he has brought suit, his recovery must be diminished by the $5,000 fee, which would have otherwise been a cost of his own performance.

■ Finally, appellant asks that the $1,500 which he expended in preparing to perform be awarded to him in addition to the benefit of his bargain. Preparatory expenses, and expenses of part performance, are often recoverable as special damages. *Lloyd v. American Can Co.*, 128 Wash. 298, 222 Pac. 876 (1924); *Kennedy v. Meilicke Calculator Co.*, 90 Wash. 238, 155 Pac. 1043 (1916); *Webster v. Beau*, 77 Wash. 444, 137 Pac. 1013 (1914).

■ However, where the plaintiff sues for his loss of profit, he cannot recover *in addition* to this the expenditures which he would have had to make in any event to carry out his own promises under the contract. See annotation, 17 A. L. R. (2d) 1300, § 8. Here, appellant would have spent the $1,500 if the contract had been executed. He is, therefore, not entitled to recover it in addition to his profit. Appellant, in effect, recovered the $1,500 when the trial court did not deduct it from his gross gain. He is not entitled to recover the same amount twice.

The trial court applied the proper measure of damages, and the judgment is, therefore, affirmed.

SCHWELLENBACH, FINLEY, ROSELLINI, and FOSTER, JJ., concur.