[No. 18-40058-1.    Division One.    December 31, 1969.]
Panel 2

WHATCOM BUILDERS SUPPLY COMPANY, *Respondent,* v. H. D. FOWLER, INC., *Respondent,* THE CITY OF BLAINE, *Appellant.*

H. D. FOWLER COMPANY, INC., *Respondent,* v. JOHN S. WILLIAMS *et al., Respondents.*

*LeCocq, Simonarson & Durnan* and *F. W. Durnan,* for appellant.

*Reed, McClure & Moceri* and *Thomas W. Huber,* for respondent.

HOROWITZ, A. C. J.—Plaintiff, H. D. Fowler, Inc. (Fowler) sued defendant, Whatcom Builders Supply Company (Whatcom) to recover the purchase price of a pump and to recover for certain work performed on the pump. That action was consolidated for trial with an interpleader action commenced by Whatcom against Fowler and the City of Blaine (City). In that action Whatcom paid into court the sum of $2,932 less a claimed offset of $343.76 as due from Fowler. The court entered judgment in favor of Fowler against Whatcom for the purchase price less the offset and awarded the interpleaded funds to Fowler to be applied on its judgment against Whatcom.[1] The City appeals, claiming it is entitled to the interpleaded funds.

The court found in substance that in September, 1963, Whatcom and the City entered into a contract for the installation of a sewage treatment plant (Whatcom-City contract) which provided for the installation of certain pumps (to be manufactured); that Whatcom then contracted with Fowler (Fowler-Whatcom contract, evidenced by exhibits 1, 2, 3) for the purchase from it of pump No. 1 for a price of $2,932; that no contract was entered into between the City and Fowler; that in June 1964, Fowler supplied What-

---

[1] The judgment in favor of Fowler against Whatcom was for $2,932 plus interest; in favor of Whatcom against Fowler in the sum of $343.76 plus interest; dismissed the City's claim against Fowler and the City's claim for the sum interpleaded; denied Whatcom's petition for attorneys' fees; awarded Fowler its costs against Whatcom and the City; offset the judgments against Whatcom and Fowler against each other; left Fowler with a judgment against Whatcom in the sum of $2,998.28 and directed the clerk to disburse the interpleaded funds in the sum of $2,588.24 to Fowler in partial satisfaction of its judgment against Whatcom.

com with pump No. 1, the pump complying with all the specifications of Whatcom's order; that immediately after installation the pump was tested; that the City found the pump unsatisfactory as not complying with certain performance specifications set out in the Whatcom-City contract; that in July 1964 the bubbler control mechanism of the pump, which was not supplied by Fowler, failed to function, with resulting performance deficiencies, none of which was the responsibility of Fowler; that the repairs following prevented the pump from thereafter attaining its maximum performance; that in September, 1964, the City "made a formal completion and acceptance" of the Whatcom-City contract "and signified this completion and acceptance to the federal government so that federal matching funds could be paid on the project"; that thereafter the City paid Whitcom in full for the Whatcom-City contract; that Whatcom did not pay Fowler the agreed purchase price for the pump; that a fourth test of the pump on April 13, 1965, indicated substantial performance in accordance with the Fowler-Whatcom contract and the engineer for the City recommended acceptance; that subsequent to the installation of the pump in 1964 the City retained and utilized the pump for over two years; that at no time up to and including the time of trial did either the City or Whatcom tender a return of the pump to Fowler. Additional reference to the findings and evidence will be hereinafter made. From these findings the court concluded that Fowler was entitled to the judgment from which this appeal is taken.

■ The City has assigned error to certain findings and conclusions which basically raise the question whether the City rather than Fowler is entitled to the interpleaded funds. The City contends that it is entitled to these funds on two grounds: (1) by virtue of the provisions of the Uniform Sales Act (RCW 63.04) in effect at the time of the 1963 contracts (now RCW Title 62A, Article 2), and (2) by virtue of the resulting trust doctrine. We are of the opinion that neither of the grounds is applicable under the express and necessarily implied findings of the court, negative or

affirmative, consistent with the findings entered. 53 Am. Jur. 2d *Trial* § 1143 (1945). See *Graham v. Roderick*, 32 Wn.2d 427, 202 P.2d 253, 6 A.L.R.2d 1237 (1949); *Sainsbury v. Wapato Fruit & Cold Storage Co.*, 132 Wash. 455, 232 P. 331 (1925).

■ The Uniform Sales Act is applicable to the Fowler-Whatcom contract as a contract to sell future goods; *i.e.*, pumps to be manufactured. RCW 63.04.060. Accordingly, when the pump after manufacture "complied with all the specifications of the order" and was appropriated by Fowler to the Fowler-Whatcom contract and then delivered to and accepted by Whatcom, title to the pump passed to Whatcom. RCW 63.04.060, 63.04.420, 63.04.490, 63.04.190, 63.04.200, Rule 4(1). The City, however, purports to make no claim under the Fowler-Whatcom contract either as assignee, subrogee, third party beneficiary or otherwise; and the court found that no contract existed between the City and Fowler—a finding supported by substantial evidence. The City's rights, therefore, must arise under the Whatcom-City contract, a contract for work, labor and materials, to which the Uniform Sales Act is not applicable but to which general principles of contract law are applicable. *Crystal Recreation, Inc. v. Seattle Ass'n of Credit Men*, 34 Wn.2d 553, 209 P.2d 358 (1949).

Even if the Uniform Sales Act were applicable to the Whatcom-City contract, the evidence does not support the City's claim that it is entitled to the interpleaded funds. Basically, the City contends that compliance with the performance specifications set forth in the Whatcom-City contract is a condition precedent to the passage of title of the pump to the city (RCW 63.04.120); that compliance never having been had, title to pump No. 1 never passed to the City and that, accordingly, it is entitled to reject the pump and without tendering it back, recover the purchase price paid. This remedy does not involve invoking the remedy of rescission (RCW 63.04.700(1)(c)). If, however, the performance specifications have not been assumed by Fowler

(*American Pipe & Constr. Co. v. Harbor Constr. Co.*, 51 Wn.2d 258, 317 P.2d 521 (1957)), or if compliance with the performance specifications is a matter of warranty rather than a matter of condition, then if the City wishes to recover the purchase price of the pump it must rescind the sale in conformity with the conditions set forth in RCW 63.04.700, 1(c), (3), (4).[2] There is substantial evidence that compliance with performance specifications by Fowler was never a condition as contended for by the City. The evidence showed that the City's project engineer by letter dated August 26, 1964, addressed to the City Council of the City of Blaine stated: "We have inspected the project and find that the work has been completed in accordance with the plans and specifications as amended. . . . We are very satisfied with their work [Whatcom's] and feel that they should be commended for doing a fine job."

At the same time the project engineer called attention to the Whatcom-City contract's provision

> for the Contractor to correct any defects in labor and material for a period of one year after acceptance

---

[2]"Remedies for breach of warranty. (1) Where there is a breach of warranty by the seller the buyer may, at his election: . . . (c) Refuse to accept the goods, if the property therein has not passed, and maintain an action against the seller for damages for the breach of warranty . . .

". . .

"(3) Where the goods have been delivered to the buyer, he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind, or if he fails to return or to offer to return the goods to the seller in substantially as good condition as they were in at the time the property was transferred to the buyer. But if deterioration or injury of the goods is due to the breach of warranty, such deterioration or injury shall not prevent the buyer from returning or offering to return the goods to the seller and rescinding the sale.

"(4) Where the buyer is entitled to rescind the sale and elects to do so, the buyer shall cease to be liable for the price upon returning or offering to return the goods. If the price or any part thereof has already been paid, the seller shall be liable to repay so much thereof as has been paid, concurrently with the return of the goods, or immediately after an offer to return the goods in exchange for repayment of the price." (RCW 63.04.700, 1(c), (3), (4)).

. . . The specification provides for re-test of the Lift Station Pumps prior to expiration of the warranty, and this fact should also be noted in your suspense file.

A copy of the letter was sent to Whatcom and the United States Public Health Service.

The court found "That in September of 1964 the City of Blaine made a formal completion and acceptance of the contract and signified this completion and acceptance to the federal government so that federal matching funds could be paid on the project. That thereafter the City of Blaine paid Whatcom Builders in full under the contract between the City and Whatcom Builders."

Presumptively, title to the sewage treatment plant on which Whatcom had theretofore installed pump No. 1 passed to the City as subject matter accepted and paid for. See *Crystal Recreation, Inc. v. Seattle Ass'n of Credit Men, supra.* Passage of title to the City upon acceptance and payment is supported by the fact that the City accepted and paid for the sewage treatment plant, including the pump installed, relying upon the one-year guarantee, attention to which was called by the project engineer in his August 26, 1964, letter. However, Whatcom's general manager testified that Whatcom was paid in full but that "They explained to me that in order to pay for the job, in order to get the federal matching money for the job, they had to accept the job, but that I should not pay Fowler for this one pump because the pump wasn't satisfactory." There was also a letter dated December 29, 1964, sent by the project engineer to Fowler, with copies to the City and Whatcom stating that "we are placing the Contractor on notice that the pumps are not acceptable and directing him to withhold all payments due to your firm on these pumps." There is no evidence of express authority and it is at least doubtful whether the project engineer had implied authority from the City to impose the purchase price withholding requirement on his own in face of the City's acceptance and payment made upon the same project engineer's recommendation. Furthermore, even if it be assumed that Fowler

had agreed to perform the performance specifications in the Whatcom-City contract, the court found that on April 13, 1965, the test of the pump "indicated substantial performance . . . and the engineer for the city . . . recommended acceptance." In a construction contract such as is here involved, calling for the installation of a sewage treatment plant, recovery may be had for substantial performance based on reasonable satisfaction. *Patrick v. Bonthius*, 13 Wn.2d 210, 124 P.2d 550 (1942). See *Yarno v. Hedlund Box & Lumber Co.*, 129 Wash. 457, 225 P. 659, 227 P. 518 (1924); *Gould v. McCormick*, 75 Wash. 61, 134 P. 676 (1913). Although an owner is entitled to an offset for deficient performance, the City made no such claim and Whatcom made no such claim. In fact, Whatcom disclaimed any interest in the interpleaded funds except for the offset allowed below. It follows that if compliance with the performance specifications is either not contractually required of Fowler or if it is so required, and the performance specifications have been substantially complied with, with no claim of offset, then the City is not entitled to the purchase price. Furthermore, if there is substantial nonperformance of the contract, then under RCW 63.04.700(3), (4) rescission is permitted only if the City conforms to the conditions spelled out in the statute permitting rescission. The court found that the City retained and utilized the pump on the sewage treatment project for over two years following the installation and never tendered the return of the pump to Fowler even after April 13, 1965, when the fourth test indicated substantial performance. The City lost its remedy of rescission and made no claim for damages. Under the circumstances, the judgment in favor of Fowler for the purchase price was proper.

█ The same result is reached if we apply common law principles. The City following acceptance and payment of the Whatcom-City contract could not rescind either because one may not partially rescind an entire contract (*Lucas v. Andros*, 185 Wash. 383, 55 P.2d 330 (1936)); or rescind for insubstantial nonperformance (*Rozzano v. Moore,* 175

Wash. 566, 27 P.2d 1096 (1933)); rescind after unreasonable delay in invoking the remedy or rescind without tender or offer to restore the consideration; *i.e.*, the pump received. 5 S. Williston on Contracts §§ 1457, 1460A, 1461, 1463, 1469 (rev. ed. 1958); 13 Am. Jur. 2d *Building and Construction Contracts* §§ 96, 101 (1964). Furthermore, the City having accepted performance of the Whatcom-City contract with knowledge of claimed defective performance of the pump is precluded from resorting to the remedy of rescission both under the Uniform Sales Act and under general contract principles. 3 S. Williston on Sales § 611b (rev. ed. 1948).

■ The City finally contends that it is entitled to the interpleaded funds because they are the subject of a resulting trust of which it is the beneficial owner. Resulting trusts are of various kinds. Restatement (Second) Trusts, §§ 404, 411 (1959). The doctrine rests upon the presumed or actual intention of the parties that although legal title is in one, equitable title shall be in another. *Creasman v. Boyle,* 31 Wn.2d 345, 196 P.2d 835 (1948). The City contends that when it paid the full Whatcom-City contract price to Whatcom, Whatcom acquired legal title to the funds but that the City impliedly remained the beneficial owner of the purchase price of the pump here involved unless and until it operated satisfactorily. It does not matter in the instant case whether the beneficial owner of the pump was the City or Fowler because the same problem is involved in either case; namely, was the claimed condition lawfully imposed and, if so, was it met. We have already found in our discussion of the contract rights of the parties that it was not a condition lawfully imposed but that if it were, it was met by substantial performance with no claim of offset and that this is enough. Both the contract theory and the resulting trust theory rest upon the intention of the parties. It would be difficult to conclude that the intention of the parties ascertained from a consideration of their contract rights is any different from the intention of the parties dealing with the same problem of entitlement to payment

merely because that intention is seen through the eyes of the resulting trust doctrine. We believe we are dealing with the same intentions and that if Fowler has the right to recover on contract principles his right of recovery is not diminished by resulting trust principles.

The judgment is affirmed.

UTTER and STAFFORD, JJ., concur.