602

[No. 247-41267-1.    Division One—Panel 2.    November 16, 1970.]

ANTHONY J. RADOSEVICH et al., Appellants, v. COUNTY COMMISSIONERS OF WHATCOM COUNTY et al., Respondents.

Burton S. Robbins, for appellants.

James P. Thompson, Prosecuting Attorney, and William A. Gardiner, Deputy, for respondents.

HOROWITZ, A. C. J.—Plaintiff husband, wife and minor son, the latter appearing by his guardian ad litem, were

denied recovery for personal injuries sustained in an intersection collision in a case tried to the court. Plaintiffs appeal.

The collision occurred on August 5, 1966, at a right angle intersection of Grandview and Jackson Roads in Whatcom County. Grandview Road is one of the approaches to Birch Bay, a popular resort. At the point of collision, Grandview Road runs in a generally easterly and westerly direction and Jackson Road runs in a generally northerly and southerly direction. Both roads are arterial county roads, but Grandview is the more heavily traveled of the two. The maximum permitted speed on each road is 50 miles per hour. At the intersection and for some distance approaching the intersection, each road is straight, level and black-topped. Visibility in the southeast corner of the intersection on the date of the accident was impaired to some extent by a tall cornfield, foliage and brush bounded by a fence about 6 feet from the paved portion of the road. There was not enough foliage on the other corners of the intersection to obstruct an approaching driver's vision although some grass and brush did impair visibility to some extent in the northwest quadrant of the intersection.

There were modified yield signs on Grandview, placed thereon by order of the Whatcom County Board of County Commissioners. They faced travelers going east and west at its intersection with Jackson Road. The yield sign here involved was properly located approximately 12 feet from the edge of Grandview and 6 feet from the edge of the Jackson Road intersection. The sign contained the word "yield," but in the lower portion of the sign, approximately the middle, there was a painted black arrow pointed upward in a dimension somewhat heavier than the word "yield." There was no provision for such a sign in the Manual for Signing governing signs as issued by the State Highway Commission pursuant to RCW 47.36.020 and RCW 36.86.040. There were no advance warning signs on Grandview Road before reaching the yield sign and there were no signs on Jackson Road at all. After the accident, the yield

signs were replaced by stop signs making the intersection a 4-way situation.

There was additional evidence from which the trial court could find as follows:

On August 5, 1966, about 6 p.m., plaintiff husband, his wife and minor son were driving in a westerly direction on Grandview Road en route to Birch Bay in a Chevrolet pickup truck with a camper attached. This was the first time they had driven this particular route. The day was clear and bright, the sun was shining, the road was dry. There was nothing impairing the view of the modified yield sign by the plaintiff driver as he headed west on Grandview Road and, although the view of the intersection was obstructed, it was apparent that it was ahead. Plaintiff was driving with his wife by his side to his right. Plaintiff son was riding in the camper. At the same time another driver, one Kenneth L. Riley, his wife, their two minor children and a neighbor's child were driving in a Chevrolet northerly on Jackson Road. The plaintiff was driving without sunglasses at a speed of 50 miles per hour or more although facing directly into the sun which did not bother him. Mr. Riley was traveling 40 to 45 miles per hour just prior to the collision. Plaintiff driver saw the modified yield sign up ahead to his right after he proceeded on Grandview Road. He testified, "I could see it from a distance down." When he saw the yield sign he applied his brakes and slowed down but to what speed is not known. His car, however, continued to move into the intersection visible ahead at 50 miles per hour or more. Although the plaintiff driver testified that he looked ahead and wondered what the yield sign meant, the court refused to accept the plaintiff's testimony that he had been confused, misled or deceived by the black arrow on the sign.

Plaintiffs' vehicle reached the intersection and plaintiff driver saw the Riley car to his left an instant before the collision. He swerved to his right but he was too late to avoid the collision. No skid marks were made by either vehicle. Plaintiff wife did not see the Riley car prior to the

collision. Plaintiff son, riding in the camper, saw Riley's car just a flash of a second prior to the collision. Mr. Riley, driving with sunglasses, saw the plaintiff's vehicle to his right on Grandview Road when it was almost upon him some 5 or 10 feet away. He attempted to avoid the collision by speeding up, but his car was struck before he could escape the plaintiffs' truck.

Plaintiffs' action is not against Mr. Riley but against Whatcom County and its commissioners. Plaintiffs contend that the defendant Whatcom County was negligent because the yield sign, having the arrow on its face, was unauthorized by the Manual for Signing and that it was deceptive and misleading to an ordinarily prudent motorist; that the county was negligent in not placing warning signs on Grandview Road at appropriate distances prior to the location of the modified yield sign; and that the county was negligent in placing the modified yield sign on Grandview Road instead of Jackson Road, Jackson Road being the less heavily traveled of the two roads. The court in his memorandum decision rejected the last two grounds, but made no findings on the issue of whether the failure to place a sign on Jackson Road or whether the absence of advance warning signs on Grandview Road constituted negligence or a proximate cause of the collision. No error is assigned to the failure to make such findings. The court did find that the defendants were negligent in using the modified yield sign, it being unauthorized by the Manual for Signing. We confine ourselves therefore to a discussion of the question of whether that sign was a proximate cause of the accident here involved.

■ A county in this state is obligated to use ordinary care to keep its county roads in a safe condition for ordinary travel. *Provins v. Bevis*, 70 Wn.2d 131, 422 P.2d 505 (1967). The county's duty includes a duty to erect road signs authorized by the State Highway Commission. RCW 36.86.040. A nonconforming or unauthorized sign erected by a county which is misleading to a traveler exercising reasonable care may create liability on the county's part if the

misleading sign is a proximate cause of an accident. *See Provins v. Bevis, supra; Schneider v. Yakima County,* 65 Wn.2d 352, 397 P.2d 411 (1964); *Lucas v. Phillips,* 34 Wn.2d 591, 209 P.2d 279 (1949).

■ Our examination of the record shows that substantial evidence supports the court's critical findings. Plaintiffs' basic contention is that the trial court erred in holding that the plaintiff driver's own negligence was the proximate cause of the collision after holding that the defendant county was negligent in the use of the unauthorized yield sign. The court found that the sign was not deceptive nor misleading to an ordinarily prudent motorist and expressly determined that the sign did not in fact deceive or mislead the plaintiff driver.[1] The findings and determination are consistent and we may properly refer to the memorandum decision as explanatory of the findings. *Ferree v. Doric Co.,* 62 Wn.2d 561, 383 P.2d 900 (1963). Evidence supports the court's determination and findings. What has been said should dispose of the contentions advanced by the plaintiffs, but in view of the earnestness with which their arguments are advanced, we further discuss the contentions.

■ A yield sign with an arrow is admittedly not authorized by the Manual for Signing and differs from a "yield" sign and "yield ahead" sign described in the manual. Nevertheless, we think that the sign placed the plaintiff driver under a duty to yield as required by RCW 46.61.190 and RCW 47.36.110.[2] Under the law of this state a

---

[1]This finding makes it unnecessary to consider whether plaintiff driver's misreading of the sign is excused by the emergency doctrine. Furthermore, as will be pointed out, plaintiff's own negligence, in other respects, brought about the claimed emergency, a fact rendering the emergency doctrine inapplicable. *Tobias v. Rainwater,* 71 Wn.2d 845, 431 P.2d 156 (1967); *Enyeart v. Borgeson,* 60 Wn.2d 494, 374 P.2d 543 (1962).

[2]RCW 47.36.020 provides that the State Highway Commission shall adopt specifications for uniform traffic control signals. Under RCW 47.36.030 these specifications are to be made available to counties and cities who are required to erect and maintain traffic control devices on roads within their respective jurisdictions (RCW 47.36.060 and RCW 36.86.040). RCW 47.36.030 provides that the signs erected by the county

sign, lawful in form, erected without authority of law is a de facto sign and has the same legal effect, in all essential respects, as a de jure sign. *Mazon v. Druxman,* 68 Wn.2d 701, 415 P.2d 86 (1966); *Hanson v. Anderson,* 53 Wn.2d 601, 335 P.2d 581 (1959); *Comfort v. Penner,* 166 Wash. 177, 6 P.2d 604 (1932). All the Washington cases dealing with de facto signs involve a standard sign installed without proper authorization by the legal body empowered to regulate the highway in question. No cases from other jurisdictions holding a nonstandard sign to be a de facto sign have come to our attention. We think, however, that the doctrine that a de facto sign should be given de jure effect is properly extended to include nonstandard signs where the form of the sign substantially complies with that prescribed by law. The rationale of the de facto rule is that a motorist is not expected to inquire into and determine the legality of the signs which he encounters before he obeys them; otherwise, chaos would result. *See Comfort v. Penner, supra.* Some motorists would obey its command and others would not. A modest variation in a standard sign, not sufficient to affect a reasonable man's observation and perception of its command, provides scant justification for avoiding performance of a duty which would be created by a de jure sign—a duty imposed upon motorists for the safety of all traveling the highways.

▪ The yield sign in the instant case substantially complied with the Manual for Signing. Plaintiff driver proceeded into the visible intersection at 50 miles per hour in violation of the statutory duty, imposed by RCW 46.61.190 and RCW 47.36.110 in yield situations, to drive at a reasonable speed and to yield the right-of-way to vehicles close enough to constitute an immediate hazard. Consequently, it

shall conform in *all respects* to the uniform standards promulgated by the State Highway Commission.

Both RCW 46.61.190 and 47.36.110 apply to yield signs on county roads. Under RCW 46.61.005, chapter 46.61 on rules of the road applies to all highways in the state regardless of the jurisdiction charged with maintenance responsibility. The portion of RCW 47.36.110 which refers to yield signs applies expressly to the Washington State Highway Commission "or local authorities in their respective jurisdictions . . ."

must be concluded that plaintiff driver was negligent as a matter of law[3] and that such negligence was a proximate cause of the collision. *Tobias v. Rainwater,* 71 Wn.2d 845, 431 P.2d 156 (1967).

Even if, however, RCW 46.61.190 and RCW 47.36.110 were inapplicable because of the "yield" sign here, it would still be necessary to affirm the judgment below. The evidence as to the misleading or deceptive character of the yield sign with the arrow was conflicting. The court as trier of the fact was empowered to find whether or not the yield sign was deceptive or misleading and to determine whether the plaintiff driver was actually deceived or misled by the sign. *See Rognrust v. Seto,* 2 Wn. App. 215, 467 P.2d 204 (1970). The court determined both issues adversely to the plaintiffs. There is no claim that the sign deceived or misled the plaintiff driver into continuing at 50 or more miles per hour into the visible intersection up ahead contrary to his otherwise existing duty to reduce his speed sufficiently to avoid the collision. In the absence of a finding that it was misleading or deceiving to the plaintiff with reference to the speed at which he was driving, it could not be reasonably claimed that the sign was the proximate cause of the collision.

Again if we assume the sign was not a de facto sign entitled to de jure recognition, then the specific statutory duty to "yield" (RCW 46.61.190; RCW 47.36.110) would be inapplicable, and under RCW 46.61.180 plaintiffs' vehicle would have the right-of-way since it was approaching the Riley vehicle from the right. Even so, however, the plaintiff driver, even if treated as a favored driver, was under a generalized duty to travel at a speed no greater than that required to keep his car under control and so avoid colliding with a vehicle approaching a visible intersection up ahead through which he was required to pass. RCW

---

[3]The trial court found that plaintiffs were traveling 50 miles per hour "or more" immediately prior to the accident. Since the trial court did not find that plaintiff exceeded the speed limit of 50 miles per hour, we do not reach the question of whether plaintiff was per se negligent for driving at an unlawful speed.

46.61.400; RCW 46.61.445; *and King v. Molthan*, 54 Wn.2d 115, 338 P.2d 338 (1959). *See also Eggert v. Schumacher*, 173 Wash. 119, 22 P.2d 52 (1933); *Bullis v. Ball*, 98 Wash. 342, 167 P. 942 (1917).

The generalized duty was activated when he saw the yield sign up ahead and the visible intersection beyond it. The sign, even if not a de facto sign, was not to be ignored in determining the reasonableness of plaintiff driver's conduct. *See Legere v. Buinicky*, 93 N.H. 71, 35 A.2d 508 (1943). The court found the plaintiff driver was negligent in failing to slow down to a reasonable speed upon approaching the yield sign and in failing to yield the right-of-way to the Riley vehicle. He necessarily and impliedly found that plaintiff could have done so in time to avoid the collision. *See Tobias v. Rainwater*, 71 Wn.2d 845, 431 P.2d 156 (1967); *Whatcom Builders Supply Co. v. H. D. Fowler, Inc.*, 1 Wn. App. 665, 463 P.2d 232 (1969).

The court found that "the negligence of Whatcom County was not the proximate cause of the collision . . ." and, still further, that "The negligence of Anthony J. Radosevich was the sole proximate cause of the collision . . ." We are bound by the court's findings. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

The judgment is affirmed.

UTTER and WILLIAMS, JJ., concur.