UNITED STATES of America for the Use and Benefit of Val GREEN-HALGH and George Piper, d/b/a Acme Granite and Tile, Plaintiff-Appellant and Cross-Appellee,

v.

F. D. RICH COMPANY, INCORPO-RATED, a corporation doing business in the State of Washington, and American Surety Company, Defendants-Appellants and Cross-Appellants,

and

B & G Constructors, Incorporated, et al., Defendants-Appellees.

Nos. 73-1431, 73-1432.

United States Court of Appeals, Ninth Circuit.

July 8, 1975.

Ralph B. Potts (argued), Seattle, Wash., for appellants.

John E. Ederer (argued), Seattle, Wash., Lyle L. Iversen (argued), Seattle, Wash., for appellee.

## OPINION

Before DUNIWAY and CHOY, Circuit Judges, and SKOPIL,* District Judge.

DUNIWAY, Circuit Judge:

This is the second appeal in this case, see 437 F.2d 549. It was begun in 1963 by the Acme Granite and Tile Company (Acme)[1] to recover damages for alleged wrongful termination of its lathing, plastering and ceramic tile work subcontract by the F. D. Rich Company (Rich), the prime contractor for construction at Fort Lewis, Washington, of a 500 unit military housing project funded under the Capehart Act, 42 U.S.C. §§ 1594–1594k. Acme's complaint also included a lien claim against Rich for an unpaid progress payment and a claim for damages against B&G Constructors, Inc. (B&G), the subcontractor responsible for framing the surfaces on which tile was to be placed. Acme claimed that some of the defects in its own performance resulted from defective framing installed by B&G. Rich, B&G and their bonding companies counterclaimed against Acme

---

* The Honorable Otto R. Skopil, Jr., United States District Judge for the District of Oregon, sitting by designation.

1. After the action was filed in its name, Acme was dissolved. On the first appeal we held, *inter alia,* that its owners and transferees, Val Greenhalgh and George Piper, should be substituted in its stead. Nonetheless, we continue to refer to them as Acme for convenience.

and its bonding company for delay damages and the costs of correcting defective work done by Acme.

By agreement, the issues of liability and damages were separated for trial. Only the liability issues were tried to a jury; the damages issues were referred to a special master by stipulation.

There were two principal liability issues. The first was whether Acme had committed a substantial breach justifying termination of the subcontract by Rich (the termination issue). This subsumed three sub-issues: whether Acme had committed a substantial breach by (1) failing to discover and report framing defects before placing its work over the frame;[2] (2) failing to resume work at Rich's written order;[3] and (3) repudiating the contract. The second issue was whether Acme's placing its work over the defective framing, and other defects in Acme's work unrelated to the framing, constituted insubstantial or partial breaches rendering Acme liable to Rich in damages for the costs of corrective work performed by a substitute subcontractor after Acme's termination (the partial breach issue).

The trial judge fully instructed the jurors on the law applicable to both issues and submitted the case on a form of special verdict which had been extensively discussed and approved by all counsel. The verdict was as follows:

We, the jury in the above-entitled cause do find our verdict as follows:

1. Acme is chargeable with substantial breach of its contract with Rich in one or more of the particulars contended by Rich.

   a. Failing or refusing to accurately check for defects in previous work of other trades before performing Acme's work. *No*

   b. Failing or refusing to report defects in previous work to the Corps of Engineers or to Rich. *No*

   c. Performing Acme's work without waiting for correction or repair of defects in framing. *No*

2. Acme is chargeable with unjustifiable refusal to proceed with its contract work after being directed by Rich to proceed with such work. *No*

3. Acme is chargeable with unjustifiable repudiation of its contract with Rich. *No*

4. Rich is chargeable with unjustifiable termination of its contract with Acme. *Yes*

5. B & G failed or refused to do corrective or repair work on its framing after being notified and requested to do so. *Yes*

6. Acme is entitled to recover damages from B & G. *Yes*

7. B & G is entitled to recover damages from Acme. *No*

Acme's victory was short-lived. The trial judge entered judgment for Rich and the other defendants notwithstanding the verdict, and also entered an order

2. The written subcontract obligated Acme to inspect the framing, report any defects to Rich or the Army Corps of Engineers, and to await corrective work before proceeding with its own work. The subcontract also incorporated standard specifications which state that starting work implies acceptance of the surface on which tile is to be placed.

3. When the Army Corps of Engineers inspector rejected a large portion of both Acme's and B&G's work, Rich and Acme mutually agreed to suspend work. About three weeks later, however, after negotiations had failed to resolve the dispute, Rich ordered Acme to resume work. This was in accord with provisions in the parties' contract requiring Acme to proceed on Rich's written order at any time, regardless of any dispute about payment or any claim by Acme that the work ordered was "extra" or required additional compensation. We noted in our previous opinion that the scope of this contractual provision is an issue that would have to be determined on remand. *See* 437 F.2d at 553. We decline to express any opinion as to the merits of this issue, for the reason that it must still be determined on remand. *See infra.*

conditionally granting their motion for a new trial, to take effect only if the judgment n. o. v. were to be reversed on appeal.

In addition, it was called to the court's attention that the special verdict form had omitted the issue of partial breach. Under Rule 49(a), F.R.Civ.P., this meant that the parties were deemed to have waived jury trial *pro tanto* and that the issue was submitted to the court for decision. The trial judge found Acme liable for partial breach. Thereafter, the damages issues were referred to a master, who was instructed to make findings and compute damages on the alternative assumptions (1) that the judgment n. o. v. would be sustained on appeal; and (2) that the jury verdict would be reinstated. With minor modifications, the court adopted the master's findings and entered final judgment.

On the first appeal, we reversed the judgment n. o. v. on the termination issue, but affirmed the conditional order granting a new trial, expressly declining to reinstate the jury verdict. *See* 437 F.2d at 553.

On remand, the original trial judge was unavailable to retry the case and it was reassigned. The new judge, believing himself not bound by his predecessor's new trial order, rescinded it, reinstated the jury verdict, and entered judgment for Acme on the termination issue. Rich now argues, and we agree, that this action was foreclosed by this court's mandate on the first appeal, which directed retrial. Acme has also appealed, assigning as error a ruling on damages by the original trial judge and contending that our previous mandate requires retrial not only of the termination issue, but of the partial breach issue as well. Neither point is well taken.

■ As a general rule, an order for a new trial, being interlocutory, is subject to modification or rescission by the trial judge at any time before entry of final judgment. *Bateman v. Donovan,* 9 Cir., 1942, 131 F.2d 759, 764; 6A Moore, *Federal Practice,* ¶ 59.13[2]. However, when once affirmed on appeal such an order loses its interlocutory character and becomes the law of the case, invulnerable on remand to any modification whatsoever. *In re Sanford Fork & Tool Co.,* 1895, 160 U.S. 247, 255, 16 S.Ct. 291, 40 L.Ed. 414. *Atlas Scraper & Engineering Co. v. Pursche,* 9 Cir. 1966, 357 F.2d 296, 298. On the previous appeal we held that the new trial order was not an abuse of the original trial judge's discretion and remanded the case for partial retrial. The trial court had no power to deviate from this court's mandate. *See also Tanner Motor Livery, Ltd. v. Avis, Inc.,* 9 Cir., 1963, 316 F.2d 804. A new trial on the termination issue is required.

■ Acme, however, questions the scope of the new trial, contending that our first opinion requires retrial of both liability issues. This is not the case. The last sentence of that opinion directs a remand "for a second trial *in accordance with the order granting the motion for new trial.*" 437 F.2d at 553 (emphasis added). The order referred to does not expressly state that only the termination issue is to be retried, but the rationale it gives for granting the new trial motion is "that the *verdict and all of the responses to special interrogatories* were in all respects contrary to law and against the weight of the evidence." (emphasis added). The special interrogatories, reproduced above, did not include the partial breach issue. Necessarily, neither did the verdict. It follows that the new trial order did not include it, and this conclusion is bolstered by the fact that on the same day that the trial judge ordered the new trial, he entered his own findings on the partial breach issue pursuant to Rule 49(a). Unless we are to ascribe to him an intent to vacate his own findings as contrary to the weight of the evidence, the conclusion is inescapable that he treated the termination and partial breach issues separately.

Acme does not here challenge the trial judge's findings on partial breach as clearly erroneous, and it did not do so on the first appeal either. Accordingly, we have no occasion to pass on them. Having been finally adjudicated, the issue of

partial breach may not be retried on remand.

Damages issues should also be excluded from the retrial. These issues have already been extensively tried by stipulation before a master, and the master's findings have been fully reexamined and with minor modifications approved by the original trial judge. Damages have been computed in the alternative, depending on the ultimate outcome of the termination issue. Regardless of which party prevails, the trial judge need then only enter judgment in accordance with the appropriate findings.

 On the first appeal Acme raised several objections to some of these findings, but our opinion did not discuss any of them, presumably because we found no merit in them. On this appeal Acme has abandoned all but one of these arguments.[4] We seriously doubt whether the issue remains open, but note briefly our reasons for rejecting Acme's argument.

 After Acme was terminated, Rich engaged another contractor to finish, Acme's work. Because the new contractor would not do the work for the same price, Rich withdrew the portion of its offer which covered the work, which the Army had not yet accepted, and submitted a higher offer. Eventually the Army agreed to increase Rich's contract by approximately $77,000. Acme claims that this amount should be added to the face of the subcontract in computing the lost profits to which it will be entitled should it prevail on the termination issue. Not so. The purpose of awarding damages is "to place the plaintiff, as nearly as possible, in the position he would be in had *the contract* been performed." *Platts v. Arney,* 1957, 50 Wash.2d 42, 46, 309 P.2d 372, 374–75 (emphasis added). At the date of termination, Acme's subcontract called for payment of $286,684. That is the amount to which Acme would have been

entitled had the contract been performed. That any portion of the additional money obtained by Rich would have been added to Acme's subcontract, had it been performed, is entirely speculative, and hardly an appropriate basis for awarding additional damages.

The judgment of the district court is reversed and the cause remanded for a partial new trial in accordance with this opinion.

---

4. An appendix to Acme's opening brief states fourteen of these arguments, but the body of the brief devotes itself to only one. Failure to argue an issue presented for review is a waiver of the issue on appeal. *Iob v. Los Angeles Brewing Co.,* 9 Cir., 1950, 183 F.2d 398, 401; *Western Nat. Ins. Co. v. LeClare,* 9 Cir., 1947, 163 F.2d 337, 340.