[No. 10420–9–I.  Division One.  December 24, 1984.]

LINCOR CONTRACTORS, LTD., ET AL, *Respondents,* v.
ROBERT L. HYSKELL, ET AL, *Respondents,*
CONTINENTAL, INC., *Appellant.*

*Edwards & Barbieri, Malcolm Edwards, Quigley, Hatch, Loveridge & Leslie,* and *Willard Hatch,* for appellant.

*Helsell, Fetterman, Todd & Hokanson* and *Gary F. Linden,* for respondents Lincor Contractors, et al.

*Perkins, Coie, Stone, Olsen & Williams* and *Richard Ottesen Prentke,* for respondents Cobb, et al.

*Abbey & Jaffe, Mark Jaffe,* and *Vincent H.D. Abbey,* for respondents Brown, et al.

*Bo Barker,* for respondents Proctor, et al.

WILLIAMS, J.—This appeal involves the financing and construction arrangements for a building which was never built. The Superior Court, in its judgment against the financing company, Continental, Inc., awarded money damages to the owner, a partnership of Robert L. Hyskell and others d/b/a Lynnwood Pacific Industrial Center, for breach of contract and to the contractor, Lincor Contractors, Ltd. for tortious interference with the construction contract. Continental appeals and Lynnwood Pacific cross–appeals. We reverse and remand on the issue of Lynnwood Pacific's damages.

The facts are that Lynnwood Pacific purchased on contract a building site in Lynnwood upon which to construct an office complex. It contracted with Lincor, a general contractor, to design and build the project.

As Lynnwood Pacific had limited assets, Lincor assisted it in obtaining 100 percent financing for the project by contacting Continental, a commercial mortgage lender, for both a construction loan and permanent financing. Based upon Continental's assurance that the construction loan would be made, Lynnwood Pacific borrowed $100,000 from Rainier National Bank to make a balloon payment on the real estate contract. Continental then negotiated, and Lynnwood Pacific accepted, a commitment for permanent financing of $1.8 million from Union Mutual Life Insurance Company. After reviewing several loan applications from Lynnwood Pacific, the construction budget and contract, and a project appraisal, Continental agreed to provide the construction loan. Lynnwood Pacific then authorized Lincor to begin construction.

Shortly thereafter, Continental told Lynnwood Pacific

that no funds would be disbursed until Lincor was removed as the general contractor. Lynnwood Pacific discharged Lincor but was unable to find another builder. Continental did not provide the construction money, the Union Mutual commitment expired, and the project dissolved. Litigation which developed among the parties was consolidated for trial.

The principal issue on appeal concerns the method employed by the trial court in assessing the damages sustained by Lynnwood Pacific because of Continental's withholding of the construction loan proceeds, thus effectively terminating the project.

The trial court found that the project could have been completed by April 1979 as contemplated in the construction contract at a cost of $1,996,622, but that to construct the complex after judgment would cost an additional $397,342.70 for increased interest and an additional $282,920.74 for increased construction expenses. The trial court also found that Lynnwood Pacific was entitled to $254,987.79 for lost rent caused by the delay, $40,753.97 for interest paid to Rainier National Bank, $51,722.45 for interest paid to Mr. Petropoulous, the beneficiary of a deed of trust on the property, and $59,750 for loan fees paid to Continental.

These findings were carried into the judgment against Continental on the theory that after judgment Lynnwood Pacific would complete the project. To fix the damages upon what the cost would be to build after judgment with the attendant assessment of the additional interest cost, lost rent and inflation loss is a fundamentally erroneous method of computation leading only to conjecture and surmise. Rather, the following applies:

> The purpose of awarding damages for breach of contract is neither to penalize the defendant nor merely to return to the plaintiff that which he has expended in reliance on the contract. It is, rather, to place the plaintiff, as nearly as possible, in the position he would be in had the contract been performed. He is entitled to the

benefit of his bargain, *i.e.,* whatever net gain he would have made under the contract. *Munson v. McGregor,* 49 Wash. 276, 94 Pac. 1085 (1908); *Herbert v. Hillman,* 50 Wash. 83, 96 Pac. 837 (1908); *Herrett v. Wershnig,* 170 Wash. 417, 16 P. (2d) 608 (1932); *Hardinger v. Till,* 1 Wn. (2d) 335, 96 P. (2d) 262 (1939); Williston on Contracts, § 1338; McCormick on Damages, § 137.

The plaintiff is not, however, entitled to more than he would have received had the contract been performed. If the defendant, by his breach, relieves the plaintiff of duties under the contract which would have required him to spend money, an amount equal to such expenditures must be deducted from his recovery. *Gould v. McCormick,* 75 Wash. 61, 134 Pac. 676 (1913); *Robbins v. Seattle Peerless Motor Co.,* 148 Wash. 197, 268 Pac. 594 (1928); *Rathke v. Roberts,* 33 Wn. (2d) 858, 207 P. (2d) 716 (1949); Restatement, Contracts, §§ 329, 333, 335; McCormick on Damages, § 143.

*Platts v. Arney,* 50 Wn.2d 42, 46, 309 P.2d 372 (1957).

In measuring Lynnwood Pacific's damages, three additional rules are applicable:

(1) Damages must be proved with reasonable certainty or supported by competent evidence in the record. *Iverson v. Marine Bancorporation,* 86 Wn.2d 562, 565, 546 P.2d 454 (1976).

■ (2) Damages for a lender's breach of a contract to loan money are recoverable if they were reasonably in the contemplation of the parties when the contract was made, are the natural and proximate results flowing from the breach, and were proved with reasonable certainty. *Larson v. Union Inv. & Loan Co.,* 168 Wash. 5, 12, 10 P.2d 557 (1932).

■ (3) In the case of construction contracts, special problems have been encountered in putting the injured party in the pecuniary position he would have enjoyed had the contract been properly performed by the builder. These special problems have led to the creation of special rules for measuring damages in such cases. *Eastlake Constr. Co. v. Hess,* 102 Wn.2d 30, 39, 686 P.2d 465 (1984).

With these precepts in mind, the consequences of Continental's breach are:

### LOSS OF CONTEMPLATED BUILDING

Lynnwood Pacific presented no evidence that it would procure another loan, hire another contractor and construct another building.[1] Thus, it did not sustain its burden of proof that any increased interest or construction costs would be incurred. Because these costs were neither proven with reasonable certainty nor supported by competent evidence in the record, the trial court erred in awarding damages for these items. *See Iverson,* at 565.

But, Lynnwood Pacific has suffered a loss. When the contract was made, the parties contemplated that Lynnwood Pacific would use the loan from Continental to construct the building. As a natural and proximate result of Continental's breach, Lynnwood Pacific could not construct the building. Lynnwood Pacific's equity in the building can be proven with reasonable certainty. *See, e.g.,* findings of fact 5, 63, 42. Thus, Lynnwood Pacific is entitled to an award of damages, *see Larson,* at 12, measured by its loss of equity, *see St. Paul at Chase Corp. v. Manufacturers Life Ins. Co.,* 262 Md. 192, 278 A.2d 12, 35–37, *cert. denied,* 404 U.S. 857 (1971).

### LOST RENT

The trial court awarded Lynnwood Pacific lost rent for a period of 30 months, measured from the scheduled date of completion to the date of anticipated completion if Lynnwood Pacific constructed another building. This was error because Lynnwood Pacific did not prove that another building would be constructed. *See Iverson,* at 565.

Lynnwood Pacific is, however, entitled to be compensated for not having the rent–generating building from the date of scheduled completion to the date of judgment, *i.e.,*

---

[1] In fact, two of the four partners of Lynnwood Pacific testified that another building would not be built. Verbatim Report of Proceedings, at 799 (Brown), 940 (Proctor).

a period of 25 months. *See Platts,* at 46. This is a special problem calling for the use of special rules. *See Eastlake Constr. Co.,* at 39. The trial court found the net monthly rental value to be $8,606.61. Awarding Lynnwood Pacific lost net monthly rental from the scheduled date of completion to the date of judgment when the amount became liquidated and interest commenced to accrue is appropriate. *See Sandler v. Lawn–A–Mat Chem. & Equip. Corp.,* 141 N.J. Super. 437, 358 A.2d 805, 814 (1976).

Under this equity method of computation, the court can find the net gain by deducting from the fair market value of the building on the date of scheduled completion all costs Lynnwood Pacific reasonably would have incurred in achieving the completed building, including the cost of acquiring the land and borrowing money.

■ Another issue raised by Continental involves the fixing of liability and award of damages to Lincor for tortious interference with the construction contract. Continental contends that its economic interests were being threatened and so its interference was privileged. *See Holman v. Coie,* 11 Wn. App. 195, 214, 522 P.2d 515, 72 A.L.R.3d 1209, *review denied,* 84 Wn.2d 1011 (1974), *cert. denied,* 420 U.S. 984 (1975). The rule is that interference is justified as a matter of law only when the one interfering is exercising an absolute right, equal or superior to the right which is invaded. *Topline Equip., Inc. v. Stan Witty Land, Inc.,* 31 Wn. App. 86, 93, 639 P.2d 825, *review denied,* 97 Wn.2d 1015 (1982). Continental had no right under its contract with Lynnwood Pacific to require that Lincor be removed from the project. Nor did Continental acquire such a right because the construction contract was terminable at will, so long as neither of the parties had elected to terminate it. Restatement (Second) of Torts § 766, comment *g,* at 10–11 (1979); *see also Island Air, Inc. v. LaBar,* 18 Wn. App. 129, 140, 566 P.2d 972 (1977). Continental's interference was not privileged and the damages were properly awarded.

Continental also contends that Lincor's damages should have been limited to the profit it would have made on the

project. The trial court awarded Lincor the entire amount of compensation it would have received under its contract with Lynnwood Pacific—6 percent of the project's budgeted cost. This amount should have been reduced by any expenses Lincor saved as a result of Continental's wrongful acts. C. McCormick, *Damages* § 40, at 146 (1935); Restatement (Second) of Torts § 774A, comment *b,* at 55 (1979). There is no evidence that Lincor's expenses were reduced by Continental's tortious interference, thus the trial court's computation of Lincor's damages was correct. *See Williams v. Fixdahl,* 6 Wn. App. 24, 27–28, 491 P.2d 1309 (1971).

We have examined the other issues in Continental's assignments of error and determined that they are insubstantial.

Lynnwood Pacific's cross appeal concerns attorney's fees, one of the contentions being that because the construction loan application, the proposed construction loan agreement, and an application for a permanent loan from Continental all contained attorney's fees provisions, fees should be allowed under RCW 4.84.330. No action was brought to carry out the terms or for the breach of any of these documents. Hence, they create no right to attorney's fees.

Nor are Lynnwood Pacific's attorney's fees consequential damages. Expenses of litigation are not recoverable unless authorized by contractual obligation, statute or a recognized ground of equity. *State ex rel. Macri v. Bremerton,* 8 Wn.2d 93, 113–14, 111 P.2d 612 (1941).

Finally, Lynnwood Pacific contends Continental is liable for the attorney's fees it incurred in defending against a lien foreclosure suit Lincor brought for its engineering, architectural and development fees. The partnership was primarily liable to Lincor for these charges and should have paid them. The cost of resisting paying an honest debt cannot be passed on.

In view of all the facts and circumstances, we feel that the fairest disposition we can make of this appeal is to remand the cause to the Superior Court for Snohomish County to reopen for evidence as necessary and to redeter-

mine Lynnwood Pacific's damages. In all other respects, the judgment is affirmed. Neither party will recover costs in this court.

SCHOLFIELD, J., concurs.

RINGOLD, J. (concurring in part, dissenting in part)—I agree with the majority's opinion except as it relates to Lynnwood Pacific's damages. I would hold that the trial court's judgment was within the scope of the evidence and should be affirmed.

The majority apparently bases the conclusion that the trial court's award of damages was too "speculative" on the assumption that the project would never be built. The testimony cited in support of this proposition does not support the interpretation urged by the majority.[2] From the

---

[2]The testimony the majority relies on arose during the direct examination of Brown and Proctor on the items of damage claimed by Lynnwood Pacific. The partners appeared to be stating that they could not build the project, at the original cost, not that they never intended to build:

[BROWN] A: My portion of the initial investment, in addition as the others did, I have an obligation on the real estate contract, on the $100,000 loan from Rainier, and also the loss of interest on my money, the loss of income from rentals, and I can't begin to estimate the loss of income my company has suffered due to not having the facility available to us.

Q: The expenses of this lawsuit, your share of that?

A: Legal fees.

Q: Do you have any idea, Mr. Brown, what additional expenses you have to make today if this project were to go forward and you started refinancing with some other organization?

A: I really haven't any idea. I know it is considerably higher and would be impossible for me.

Q: When you say "considerably higher," what are some of the things that would be considerably higher?

A: Well, building costs, interest costs, have all gone up considerably.

. . .

Report of Proceedings, at 798.

[PROCTOR] Q: Now in addition you will suffer costs of increased construction costs. Suffer losses in the form of increased construction costs, is that correct?

A: Yes, no question about the fact this construction cannot be built.

Q: In the form of higher interest rates?

A: That's correct.

Report of Proceedings, at 940.

record, the findings of fact, and Lynnwood Pacific's choice of damages theory, we must accept the trial court's award of damages based on the anticipated completion of the project. That the trial court made such a finding may be implied from the express findings entered. *Whatcom Builders Supply Co. v. H.D. Fowler, Inc.,* 1 Wn. App. 665, 463 P.2d 232 (1969).

The majority correctly cites *Platts v. Arney,* 50 Wn.2d 42, 46, 309 P.2d 372 (1957) for the "benefit of the bargain" rule that a plaintiff is entitled to be placed in the position he or she would have been in had the contract been performed. The reversal of the trial court's award seems to assume, however, that there is only one correct way to determine what the "benefit" is. There are actually many possible ways to determine damages in a contract case. It is not the role of this court to decide post hoc what theory the plaintiffs should have elected and the court applied. When the trial court award of damages is within the scope of the evidence, on a legally correct theory, the appellate court should not choose an alternate theory. *Cf. Steele v. Queen City Broadcasting Co.,* 54 Wn.2d 402, 408–09, 341 P.2d 499 (1959).

Damages may encompass, among other things, loss of out–of–pocket expenses, profits for losses or other gains prevented by the breach, expenditures in part performance, expenses of litigation caused by the breach, and interest. *See* Restatement (Second) of Contracts ch. 16 (1981). Restatement section 348 specifically provides alternatives to loss in value of performance in construction contracts.

At the time of trial Lynnwood Pacific had to present a coherent theory of recovery, selecting damages they believed could be proved. It appears from the record that they had a choice of several possible theories of damages, including: (1) restitution of out–of–pocket costs; (2) assuming that the building would not be completed because of lack of financing and seeking lost profits; or (3) assuming resumption of the project and seeking the increased costs of construction and rentals lost due to the delay in construc-

tion.

Lynnwood Pacific and the trial court adopted the third approach, which was appropriate under the circumstances. *See Eastlake Constr. Co. v. Hess,* 102 Wn.2d 30, 39, 686 P.2d 465 (1984). This decision should not be reversed absent a showing of legal error or manifest abuse of discretion.

It is not surprising that Lynnwood Pacific did not use the "equity" theory advocated here by the majority. This approach has not previously been used in Washington, and only rarely in other parts of the country.

Additionally, the two cases relied on by the majority do not state that the "equity approach" is the only, or even the best, theory. Rather, in both cases the appellate courts affirmed the trial courts' determination of damages as being within the broad discretion of the court. *St. Paul at Chase Corp. v. Manufacturers Life Ins. Co.,* 262 Md. 192, 278 A.2d 12, *cert. denied,* 404 U.S. 857 (1971); *Sandler v. Lawn–A–Mat Chem. & Equip. Corp.,* 141 N.J. Super. 437, 358 A.2d 805 (1976). Had the trial court here adopted the "equity" theory, I would have no trouble affirming that award. It is the substitution of an alternate theory on appeal to which I must object. It is not the function of this court to calculate damages. When, as here, the trial court findings are legally correct and are supported by substantial evidence, they should be affirmed.

The trial court determined that a reasonable application of the benefit of the bargain rule justified hypothesizing new financing for the project, and that the project would be completed within cost estimates and occupied by April 1979. The trial court theory was supported by the testimony of a qualified expert. The vagaries of the economic factors probably affecting the loss of expected profits within the time frame considered by the trial court were adequately shown at trial.[3] Continental had an opportunity to

---

[3]The trial court award of 30 months' lost rental, due to the period when construction was delayed, was an appropriate part of the damages compensating

present, and did present, its own expert whom the trial court did not deem credible. The trial judge is in a better position to weigh the evidence and evaluate the credibility of the witnesses than is the appellate court, and the trial court's evaluations should not be upset on review. *Steele.*

I see no error in the trial court's calculation of damages and would affirm Lynnwood Pacific's judgment against Continental.

Reconsideration denied February 28, 1985.

Review denied by Supreme Court May 10, 1985.

Lynnwood Pacific for the rental lost due to the delay in construction. The majority's award of 25 months of lost rent does not, however, appear to be supported by theory or case law.