This case comes before the court on defendant’s motion to dismiss plaintiffs’ Exception No. 14 on the ground of res judicata. It is one of several related cases brought under the Indian Claims Commission Act of 1946, 60 Stat. 1049, docket Nos. 19, 188, 189-A, 189-B, 189-C, and 19 and 189-A consolidated. Defendant asserts that the claims raised in Exception No. 14 are foreclosed because they were or could have been determined in previous proceedings brought before the Indian Claims Commission (Commission). Answering, plaintiffs oppose this motion.
Exception No. 14 demands a full accounting of moneys and goods agreed to be delivered by defendant to plaintiffs under nine treaties with various bands of the Minnesota Chippewa excluding the Red Lake Band. Specifically, by Exception No. 14 plaintiffs seek to determine: (a) whether all the agreed consideration under each treaty was in fact paid; (b) whether the disbursements were made to the bands entitled to them; (c) whether disbursements made are properly chargeable as treaty disbursements; and (d) whether any of these funds ever received any interest on their moneys.
The nine treaties involved are as follows:
1. Treaty of July 29,1837, 7 Stat. 536.
2. Treaty of October 4,1842, 7 Stat. 591.
3. Treaty of August 2,1847, 9 Stat. 904.
4. Treaty of September 30,1854,10 Stat. 1109.
5. Treaty of February 22,1855,10 Stat. 1165.
6. Treaty of March 11,1863,12 Stat. 1249.
7. Treaty of May 7,1864,13 Stat. 693.
8. Treaty of April 7,1866,14 Stat. 765.
9. Treaty of March 19,1867,16 Stat. 719
*763 The 1863 Treaty was explicitly superseded by the 1864 Treaty.
Defendant contends that the claims raised by Exception No. 14, regarding each of the nine treaties are barred by the doctrine of res judicata because they either were raised or could have been raised in cases brought under the Indian Claims Commission Act before the Commission. The Treaty of 1837 was considered and rights thereunder adjudicated in Minnesota Chippewa Tribe v. United States, 26 Ind. Cl. Comm. 22 (1971); 32 Ind. Cl. Comm. 192 (1973) [hereinafter referred to as No. 18-C]; the 1842 Treaty was considered and rights thereunder adjudicated in Minnesota Chippewa Tribe v. United States, 37 Ind. Cl. Comm. 146 (1976); 41 Ind. Cl. Comm. 102 (1977) [hereinafter referred to as No. 18-S]; the 1847 Treaty was considered and rights thereunder adjudicated in Minnesota Chippewa Tribe v. United States, 25 Ind. Cl. Comm. 146 (1971); 28 Ind. Cl. Comm. 103 (1972) [hereinafter referred to as No. 18-T]; the 1854 Treaty was considered and rights thereunder litigated in Minnesota Chippewa Tribe v. United States, 25 Ind. Cl. Comm. 55 (1971); 41 Ind. Cl. Comm. 249 (1978) [hereinafter referred to as No. 18-U]; the Treaties of 1855, 1863, 1864, and 1867 were considered and rights thereunder adjudicated in Minnesota Chippewa Tribe v. United States, 14 Ind. Cl. Comm. 226 (1964); 65 Ind. Cl. Comm. 466 (1965) [hereinafter referred to as Nos. 18-B and 18-N]. The 1866 Treaty was considered and rights thereunder adjudicated in Bois Forte Band v. United States, 34 Ind. Cl. Comm. 157 (1974); 39 Ind. Cl. Comm. 300 (1977) [hereinafter referred to as 18-D].
Defendant asserts that the Minnesota Chippewa Tribe, its various constituent bands, and the United States were parties to each of the above-cited proceedings. This assertion is not disputed by plaintiffs. The claim at issue in the former proceedings was the revision of each treaty on the grounds of unconscionable consideration, Indian Claims Commission Act, section 2, clause 3, 25 U.S.C. §70a(3). With respect to each of the nine treaties, the Commission entered final judgments either dismissing the petitions or making final awards. There were six such final determinations made by the Commission. Dockets Nos. 18-C, 18-S, 18-T and 18-U were not appealed. Dockets Nos. 18-D, and 18-B and *764 18-N consolidated, were appealed to this court but these appeals were voluntarily dismissed or withdrawn. The Commission determinations, thus, are final determinations for purposes of res judicata application.
This motion to dismiss on grounds of res judicata brings into scrutiny the Commission’s practice of splitting off the claims for separate determination that could reach trial sooner than would a general accounting claim.
Following the passage of the Indian Claims Commission Act of August 13, 1946, all of the Chippewa Bands, including the Red Lake Band, joined in 1948 as plaintiffs in a single suit against the United States, docketed as No. 18, before the Commission. The complaint included a series of unconscionable treaty claims. Better to manage its docket, the Commission required plaintiff bands to file subcom-plaints each setting out a single treaty revision claim based on clause 3, section 2 of the Act. The subcomplaints were assigned subdocket numbers ranging from 18-A through 18-U. The Red Lake Band’s subcomplaint relating to the 1863 and 1864 treaties was filed in 1949 and was designated No. 18-A.
In August of 1951, the Minnesota Chippewa Tribe, excluding the Red Lake Band filed another suit, docketed as No. 188, presenting several claims including its general accounting claims. The instant case, No. 188, includes the nine treaty accounting claims that are the subject of defendant’s motion to dismiss.
There is no need to investigate the reasoning behind the adoption of the Commission’s practice. What is important in the context of this case is that such a practice existed and is well known to the court. That the government was aware of the Commission’s split procedure is supported by the fact that it has never raised the defense of res judicata in this case and in this context, while the case was pending before the Commission.
Given the foregoing facts, we do not believe that this is the proper case for the application of res judicata principles to portions of a single original claim, in order to cut off claims not actually litigated. To permit defendant to take advantage of an established Commission practice taking up the revision of treaty claims while the accounting cases *765 were held in abeyance, would countenance an injustice which, regardless of the reasons for adopting the procedure, this court could not sanction. Amsden v. United States, 146 Ct. Cl. 809, 812 (1959). We are therefore unable to give such a res judicata effect to any of the Commission’s earlier actions as presented in this proceeding.
Defendant has argued that some protection should be given it with respect to issues raised by Exception No. 14 which were actually litigated in No. 18-C. We find that the doctrine of law of the case would serve defendant’s purpose and conserve judicial resources by precluding relitigation of issues already decided.
As we have described the procedural history of this case above, there is no question that the treaty claims found in each of the earlier Commission decisions were separated from the instant general accounting and other claims pursuant to a Commission order after all the claims had been presented in one original complaint. It therefore cannot be seriously argued that the claims raised and decided in Commission decisions were not part of the same case as is the instant general accounting action.
In United States v. Turtle Mountain Band of Chippewa Indians, 222 Ct. Cl. 1, 612 F.2d 517 (1979), we applied the doctrine of law of the case to this court’s affirmance on interlocutory appeal of a Commission determination. We explained the rule that '"once affirmed on appeal, * * * an order loses its interlocutory character and becomes the law of the case.’” 222 Ct. Cl. at 5-6, 612 F.2d at 520-21 (quoting United States ex rel. Greenhalgh v. F.D. Rich Co., 520 F.2d 886, 889 (9th Cir. 1975) (other citations omitted). Here we have a final judgment of the Commission, which final judgment was not appealed. There is no question that law of the case effect can be given to the Commission’s unappealed final judgment. See Red Lake Band v. United States, 229 Ct. Cl. 816, 821 (1982). The Commission could split up cases either horizontally as in Turtle Mountain, supra, or vertically, as here. There is no reason why the consequences of a decision that came early in the series should be any different in the two situations.
*766 TREATY OF JULY 29, 1837
In No. 18-C, 26 Ind. Cl. Comm. 22 (1971), the Commission determined that the land known as Royce Area 242 was ceded under the above treaty, to defendant for $870,000 while it had a fair market value of $9,875,000. This consideration was so grossly inadequate as to base a claim under clause 3, section 2 of the Indian Claims Commission Act. 26 Ind. Cl. Comm. at 33. The Commission’s conclusions were embodied in an interlocutory order which directed further proceedings for the determination of permissible offsets and final award. 26 Ind. Cl. Comm. at 59. Such proceedings were in fact conducted and eventually culminated in an opinion and final order rendered by the Commission. 32 Ind. Cl. Comm. 192 (1973). In that opinion the Commission found that the agreed consideration, $870,000, was properly paid by defendant. 32 Ind. Cl. Comm. at 194. The Commission also, in its opinion and findings of fact, presented a very detailed analysis of the disbursements made under the treaty and entered determinations as to which were properly creditable as treaty payments and which were not. It passed upon what payments were payments upon the claim and what were gratuitous offsets. Finally, the Commission determined that one-third of the total final award should go to the Chippewa of the Mississippi and two-thirds to the Chippewa of Lake Superior. 32 Ind. Cl. Comm. at 213-14. Final judgment was entered on November 7, 1973.
In order to compute and to determine the amounts to represent the final award after the question of liability had been answered affirmatively, the Commission, of necessity, had to determine what amounts were actually paid as consideration under the treaty provisions, what amounts were properly treaty disbursements, and to whom the final award would go. All of these items were properly addressed by the Commission. Thus, it is clear that most of the claims raised by Exception No. 14 regarding the 1837 Treaty were actually determined in No. 18-C.
The questions that need to be answered are what issues should be precluded from relitigation by the law of the case effect of No. 18-C. The Commission addressed and decided *767 the question of whether the consideration to the petitioners under the treaty was unconscionable only as actually paid. 32 Ind. Cl. Comm. at 194. Therefore, a claim that some part of the treaty consideration was not actually paid is decided and cannot be relitigated. Likewise, all questions relating to the validity of any offsets are foreclosed because the offsets were determined by the Commission. 32 Ind. Cl. Comm. at 200. Also included in the Commission decisions and thus precluded from relitigation is the question of whether disbursements properly creditable under the treaty were made for the exclusive benefit of the plaintiffs. 32 Ind. Cl. Comm. at 213. Finally, the question of whether any funds credited under the 1837 Treaty ever eárned or should have earned any interest is not discussed in the Commission’s reported decisions or in their orders. This question can therefore be litigated by the parties as it cannot be barred by the law of the case effect of No. 18-C.
We therefore find that the only issue raised by Exception No. 14 not barred by the law of the case effect of No. 18-C is whether or not any funds credited under the 1837 Treaty ever earned or should have earned any interest. This order in no way affects the question of whether or not plaintiffs’ funds are entitled to interest. That question has never been addressed and we express no opinion on it.
TREATY OF OCTOBER 4. 1842
In No. 18-S, 37 Ind. Cl. Comm. 146 (1976), the Commission determined that the land described as Royce Area 261 was ceded, under the above treaty, to defendant for a consideration of $875,000 when it had a fair market value of $8,862,818. This consideration was so grossly inadequate as to violate clause 3, section 2 of the Indian Claims Commission Act. 37 Ind. Cl. Comm. at 167. The Commission’s conclusions were embodied in an interlocutory order, dated January 14, 1976, which directed further proceedings to determine permissible offsets and final award. 37 Ind. Cl. Comm. at 192. Proceedings were in fact conducted and eventually culminated in an opinion and final order rendered by the Commission. 41 Ind. Cl. Comm. 102 (1977). In this opinion and final order the Commission determined *768 that of the agreed consideration of $875,000 only a portion thereof was actually paid. Offsets totaling $346,689.68 were permitted and plaintiffs were awarded a net sum of $8,516,128.32, of which two-thirds went to the Chippewa of Lake Superior and one-third to the Chippewa of the Mississippi. 41 Ind. Cl. Comm. at 128-29. No appeal was taken from this final order and judgment. The Commission also, in its opinion and accompanying findings of fact, presented a detailed analysis of the disbursements made under the treaty, and entered determinations as to which were permissible as payments on the claims, and which were not. Contrary to plaintiffs’ assertion, the Commission took into account the Act of October 27, 1974, 88 Stat. 1499. This Act amended section 2 of the Indian Claims Commission Act to provide that expenditures for food, rations, or provisions should not be deemed payments on the claim hence not offsettable. The Commission disallowed payments that came within the purview of the 1974 amendment. 41 Ind. Cl. Comm. at 104-110.
Thus, it would appear that applying the analysis developed in the first part of this order which we applied to the 1837 Treaty, plaintiffs’ claims as raised in Exception No. 14, regarding this, the 1842 Treaty, are barred by the law of the case effect of No. 18-S except as to the question of interest on any funds that were created under this treaty.
TREATY OF AUGUST 2. 1847
In No. 18-T, 25 Ind. Cl. Comm. 146 (1971), the Commission determined that the land described as Royce Area 268, was ceded under the above treaty to defendant by plaintiffs, and the total consideration set forth in the treaty was $80,000. Royce Area 268 had a fair market value on the treaty ratification date, April 3, 1848, of $600,000. This consideration was so grossly inadequate as to constitute a violation of clause 3, section 2 of the Indian Claims Commission Act. These conclusions were embodied in an interlocutory order, dated March 30, 1971, which also directed further proceedings for the determination of permissible offsets and of a final award. 25 Ind. Cl. Comm. at 177. Such proceedings were in fact conducted and eventually culminated in an *769 opinion and final order rendered by the Commission. 28 Ind. Cl. Comm. 103 (1972). No appeal was taken from this final order. In this opinion, the Commission determined that not all of the agreed consideration had in fact been paid by defendant and therefore only allowed $71,000 as a credit against the fair market value of the Royce Area 268. The Commission found in favor of the Chippewa of Lake Superior and the Chippewa of the Mississippi without deciding what share of the recovery each band should receive. The Commission determined who received payments under the treaty and in allowing permissible offsets, determined by implication that the receiving parties were proper and entitled to treaty disbursements. 28 Ind. Cl. Comm. at 105. Again as with the above-discussed treaties the question of interest on treaty funds was not discussed or adjudicated.
There are no reasons to deviate from the course of action adopted earlier with regard to the above-discussed treaties. Thus, we find that plaintiffs’ claim as raised by Exception No. 14, regarding this, the 1847 Treaty is barred by the law of the case effect of No. 18-T, except as to the issue of interest.
TREATY OF SEPTEMBER 30. 1854
In No. 18-U, 25 Ind. Cl. Comm. 55 (1971), the Commission determined that the land designated as Royce Area 332, was ceded under the above treaty to defendant by plaintiffs, at the time when the land in question had a fair market value of $3,250,000. 25 Ind. Cl. Comm. at 61. In its interlocutory order, 25 Ind. Cl. Comm. at 82, the Commission directed proceedings to determine the consideration given by defendant under the treaty in return for the land there ceded. Subsequently, the Commission in No. 18-U, 35 Ind. Cl. Comm. 427 (1975), ruled that defendant was entitled to credit for the fair market value of reservations created outside the Royce Area 332, on this claim. Later, in 41 Ind. Cl. Comm. 249 (1978), the Commission ruled that the value of the reservations and other consideration, given as consideration for Royce Area 332 under the treaty, was so inadequate as to violate clause 3, section 2 of the Indian *770 Claims Commission Act. The Commission also conducted a detailed analysis of the payments on the claim determining which disbursements were proper and which were not. In its 1978 opinion and final award, the Commission determined that the amounts allowed as offsets as well as treaty disbursements were in fact paid by defendant and that the Chippewa of Lake Superior were entitled to a final award in the amount of $2,621,174.50. 41 Ind. Cl. Comm. at 292. The final order was entered on March 30, 1978. No appeal was taken from this final order.
We think that law of the case is equally applicable under the circumstances to all claims raised by Exception No. 14 and No. 18-U bars relitigation of those claims except the claim for interest, if any due, on funds that may have been created under the Treaty of 1854.
TREATIES OF FEBRUARY 22. 1855: MARCH 11. 1863: MAY 7. 1864: AND MARCH 19. 1867
The original complaint in No. 18-B, filed on August 9, 1949, contained three causes of action against the United States arising out of the above treaties as follows:
Cause 1 - The Treaty of February 22, 1855, with the Mississippi, Pillager, and Winnibigoshish Bands.
Cause 2 - The Treaty of May 7,1864, which cancelled and superseded a previous Treaty of March 11, 1863, both treaties having been made with the Mississippi, Pillager, and Lake Winnibigoshish Bands.
Cause 3 - The Treaty of March 19, 1867, with the Chippewa of the Mississippi.
Thereafter, upon plaintiffs’ motion, Causes 2 and 3 were ordered severed and a separate complaint was filed on March 24, 1952, setting forth said causes as Causes I and II of Docket No. 18-N. Subsequently, both Docket Nos. 18-B and 18-N were consolidated and a hearing was held on the issues of title and value of the tracts of land involved. 14 Ind. Cl. Comm. 226, 227 (1964).
Pursuant to the 1855 Treaty, the Mississippi Band of Chippewa, together with the Pillager and Lake Winnibi-goshish Bands ceded Royce Area 357 to defendant. The Commission found that the portion of Royce Area 357 *771 owned by the Mississippi Band had a fair market value of $2,448,655 at the time of cession, and the amount of consideration received, $508,569, was unconscionable. 14 Ind. Cl. Comm. at 292. Similarly, the Commission determined the portion of Royce Area 357 owned by the Pillager and Lake Winnibigoshish Bands had a fair market value of $3,179,880, and the amount of consideration received, $865,354.85, was unconscionable. Id. These were proceedings under No. 18-B as consolidated with No. 18-N.
In its findings of fact, the Commission found that the Mississippi Bands of Chippewa Indians held title to Royce Areas 453, 454, 455, 456, and 457. 14 Ind. Cl. Comm. at 229. Pursuant to the 1864 Treaty, plaintiffs ceded the five reservations to the United States, and as consideration received Royce Area 507. Plaintiffs were also promised additional consideration. Id. The Commission held that plaintiffs did not introduce any evidence of fair market value for the ceded areas that would exceed the fair market value of Royce Area 507, received as consideration, and on this basis dismissed plaintiffs’ unconscionable consideration claim arising out of the 1864 Treaty. 14 Ind. Cl. Comm. at 230. Thus, Cause I of No. 18-N was disallowed.
Finally, the Commission determined that pursuant to the 1867 Treaty, plaintiffs ceded Royce Area 507, with a minor exception, to the United States. 14 Ind. Cl. Comm. at 231. At the time of cession, Royce Area 507 had a fair market value of $1,297,340. The amount of consideration received totalled $1,083,387.86. The Commission found that the amount of consideration received by plaintiffs equalled approximately 83 percent of the fair market value of the land plaintiffs ceded and concluded that such a finding did not establish an unconscionable consideration requiring a revision of the 1867 Treaty. The Commission therefore dismissed Cause II of No. 18-N.
The Commission’s dismissals of Causes I and II of No. 18-N relating to the 1863, 1864, and 1867 Treaties, were embodied in a final order dated November 20, 1964. 14 Ind. Cl. Comm, at 328A. The Commission’s findings in No. 18-B, pertaining to the 1855 Treaty, were reflected in an interlocutory order also dated November 20, 1964. This order *772 directed further proceedings to determine permissible offsets and a final award. Id.
Plaintiffs appealed both the interlocutory order in No. 18-B and the final order dismissing its claims in No. 18-N to this court. However, before these appeals were heard in this court, the parties stipulated a settlement regarding "all claims or demands the plaintiffs in Docket Nos. 18-B and 18-N have, or could have asserted against the United States in said dockets.” 15 Ind. Cl. Comm. 466, 484 (1965). As part of the stipulated settlement, plaintiffs agreed to withdraw their pending appeals. The appeals were in fact so withdrawn. The Commission entered final judgment based on the stipulated settlement on July 27, 1965. 15 Ind. Cl. Comm. 486A (1965). This judgment was never appealed.
Plaintiffs herein tell us that as to the claims under the two treaties that were dismissed by the Commission, that tribunal had no occasion to test the treaty articles under which defendant agreed to pay money and furnish goods in addition to granting the reservations. Thus, plaintiffs assert, "whether the United States even satisfied its obligations under the two treaties never was reached by the Commission.” Through Exception No. 14 plaintiffs seek to determine whether defendant’s obligations under the two treaties were ever satisfied.
While the court has, with regard to other previously discussed treaties, refused to give res judicata effect to earlier Commission proceedings for reasons there advanced, in this situation we have no choice but to preclude the issues raised by Exception No. 14 on res judicata grounds. Plaintiffs, by their stipulated settlement, have waived any objections to the application of res judicata to the instant claims under the 1855, 1863, 1864, and 1867 Treaties. This result obtains by virtue of express settlement language barring any and all claims that plaintiffs "have or could have” brought in Nos. 18-B and 18-N.
As we have seen, plaintiffs have, and indeed could have, called on the government to account for proceeds under each of the treaties litigated before the Commission. We have barred those claims actually litigated in the Commission proceedings and raised herein by the doctrine of law of the case. We have not precluded the issue of whether *773 interest was paid on any funds created by any of the treaties because the issue was not actually litigated. This result is not, however, available with respect to the four treaties here considered. Again the broad settlement language precludes any issue that was or could have been litigated relating to each of these treaties. Whether any interest-bearing funds were created under each of these treaties cannot be determined by virtue of broad language of the settlement. There are no indications in the record of Nos. 18-B or 18-N to show that such funds were created. Since it cannot be determined whether such funds were created or if any existed, no determination as to interest on any such funds is possible because of the express language of the settlement. Plaintiffs’ claim regarding interest as it is raised by Exception No. 14 under the 1855, 1863, 1864, and 1867 Treaties, is therefore barred by the res judicata effect of Nos. 18-B and 18-N. Exception No. 14 is thereforé dismissed in its entirety as it relates to these four treaties.
TREATY OF APRIL 7. 1866
In No. 18-D, 34 Ind. Cl. Comm. 157 (1974), the Commission found that pursuant to the 1866 Treaty, the Bois Forte Band of Chippewa Indians ceded Royce Area 482 to defendant. At the time of cession, Royce Area 482 had a fair market value of $1,100,000. The consideration of $338,200 promised under the treaty was so grossly inadequate as to render the consideration unconscionable within the meaning of clause 3, section 2 of the Indian Claims Commission Act. The Commission entered an interlocutory order reflecting the above findings and conclusions and directed further proceedings for a determination of permissible offsets and ostensibly of a final award.
In its opinion, decided January 28, 1977, 39 Ind. Cl. Comm. 300 (1977), the Commission corrected its conclusion regarding the promised consideration from $338,200 to $318,200. 39 Ind. Cl. Comm, at 300 n. 1. Of the amount promised as consideration, the Commission decided that only $76,191.35 should be deducted as a payment on the claim and that no gratuitous offsets should be allowed. 39 Ind. Cl. Comm, at 325. Final judgment in the amount of *774 $1,023,808.65 was entered in favor of plaintiffs and no appeal has been prosecuted.
Contrary to plaintiffs assertion herein, the Commission took into account the Act of October 27, 1974, 88 Stat. 1499, when it considered the question of payments on the claim. 39 Ind. Cl. Comm, at 306. This act amended section 2 of the Indian Claims Commission Act to provide that expenditures for food, rations, or provisions should not be deemed payments on the claim hence not offsettable. The Commission disallowed those expenditures that came within the purview of the 1974 amendment. Id.
There are no reasons advanced by plaintiffs regarding the claims raised by Exception No. 14 as to the 1866 Treaty which we have not already addressed. Thus, applying our earlier analysis, we hold that law of the case bars Exception No. 14 except as to the question of interest on any funds that were created by that treaty, if such funds were entitled to interest.
it is therefore ordered that Exception No. 14 is dismissed except as it raises a claim for interest on funds that might be entitled thereto under the following treaties:
1. Treaty of July 29,1837, 7 Stat. 536;
2. Treaty of October 4,1842, 7 Stat. 591;
3. Treaty of August 2,1847, 9 Stat. 904;
4. Treaty of September 30,1854,10 Stat. 1109; and
5. Treaty of April 7,1866,14 Stat. 765.
it is further ordered that Exception No. 14 is dismissed in its entirety as it relates to the following treaties:
1. Treaty of February 22.1855,10 Stat. 1165;
2. Treaty of March 11,1863,12 Stat. 1249;
3. Treaty of May 7,1864,13 Stat. 693; and
4. Treaty of March 19,1867,16 Stat. 719.
IT IS SO ORDERED
May 14,1982